NO. 07-05-0332-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL C

MARCH 29, 2007
_____

CHRISTIAN BJORGAARD,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 69TH DISTRICT COURT OF DALLAM COUNTY;

NO. 3868; HON. RON ENNS, PRESIDING
_____

*Opinion*
_____

Before QUINN, C.J., and HANCOCK and PIRTLE, JJ.

Christian Bjorgaard (appellant) appeals his conviction for attempted sexual assault. Via four issues, he contends that 1) the trial court erred in allowing the State to present evidence, during the guilt phase of the trial, of a prior conviction, 2) the trial court erred in overruling his request to dismiss a member of the jury during trial after the juror disclosed that he was acquainted with the victim's father, 3) the evidence was insufficient to support his conviction, and 4) the trial court erred by failing to hold a hearing on his motions for new

trial and to arrest judgment. We consider the issues in an order opposite to that presented by appellant and in doing so reverse the judgment.

### *Issue Four – Hearing on Motion for New Trial and to Arrest Judgment*

Under this issue, appellant asserted that the trial court erred in failing to hold a hearing on his motions for new trial and to arrest judgment. Through those motions, he alleged that the jury had engaged in misconduct by 1) finding him guilty because he was previously convicted of a similar offense and 2) sentencing him with an eye towards the amount of time he would actually serve. These allegations were founded upon the comments appearing in an affidavit executed by one of the jurors. In that affidavit, the juror purported to describe what some of his fellow jurors considered in reaching their decision.[1] We overrule the issue.

It is clear that the decision whether to grant or deny a new trial lies within the discretion of the trial court. *Wallace v. State,* 106 S.W.3d 103, 108 (Tex. Crim. App. 2003). Similarly undisputed is that when new trial is founded upon matters not discernible from the record, the allegations in the motion must be supported by affidavit illustrating their accuracy before the movant is entitled to a hearing. *Martinez v. State*, 74 S.W.3d 19, 21-22 (Tex. Crim. App. 2002). Implicit within this rule is the requirement that the purported evidence contained in the affidavit be competent and admissible for if it is not it can hardly illustrate the truth of what is being said.

Next, applicable rule of evidence bars a juror from testifying about any matter or statement made during the jury's deliberations or about a juror's mental processes. *See*

---

[1]According to the affiant, several jurors said "that [appellant] was likely guilty of this crime because he had done this before."

2

TEX. R. EVID. 606(b).[2]  With this rule in mind, we note that the evidence proffered involved, as stated by the affiant, the "collective thought [of the jurors] in the deliberation room . . . ."  Describing the collective thought of the jurors is nothing more than imparting their deliberative processes.  Given this, Rule 606(b) barred the trial court from considering the contents of the affidavit.  And, without those contents, nothing remained in the affidavit to support the allegation within the pending motions.  Consequently, the trial court did not abuse its discretion in failing to conduct a hearing on those motions.

### Issue Three – Legal and Factual Sufficiency

Next, appellant asserted that the evidence was legally and factually insufficient to support the verdict.  We disagree and overrule the issue.

The applicable standards of review are well settled and will not be reiterated.  Next, the State accused appellant, via its indictment, that he

> did then and there, with the specific intent to commit the offense of Sexual Assault of [H.D.], do an act, to wit: placing his hand underneath [H.D.'s] shorts, which amounted to more than mere preparation that tended but failed to effect the commission of the offense intended; . . . .

Evidence of record indicated that appellant (H.D.'s uncle) visited with H.D. and her thirteen-year-old brother while their parents were gone.  H.D. was approximately ten years old at the time.  The three began watching a movie when appellant directed H.D. to sit on his lap.  She complied, and appellant began tickling her on her stomach and legs.  During this time, appellant reached under her shorts and touched the outside of her "privates."  This allegedly occurred three times, and each time it did H.D. directed him to "stop."  In response to the directives, appellant allegedly asked "why?"  Thereafter, she jumped from

---

[2]While there are exceptions to this rule, appellant does not contend that they apply.

his lap, went to the bathroom, entered the shower, stayed in the shower for an hour, and did so because she feared what appellant would "do to [her] next." Eventually, she left the shower, went to her room and began dressing. Before she could finish and while she wore only undergarments, appellant looked into her room and said ". . . he was only [her] uncle." This is some evidence upon which a factfinder could rationally conclude beyond reasonable doubt that appellant committed the crime alleged in the indictment. Simply put, a rational jury could have concluded that had H.D. not left his lap, appellant would have penetrated her vagina with his finger, and that would have constituted sexual assault. *See* TEX. PENAL CODE ANN. §22.011 (Vernon Supp. 2006) (defining sexual assault as, among other things, the insertion of a finger into the female sex organ).

That H.D. was the only witness to testify about the assault and that she may have previously indicated that appellant did not touch her "privates" did not alone vitiate the evidence of appellant's guilt. Conviction can be had on the testimony of the victim alone. *See Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App.1978); *Ozuna v. State,* 199 S.W.3d 601, 606 (Tex. App.–Corpus Christi 2006, no pet.). And, any discrepancies in her testimony merely created opportunity for the jurors to assess her credibility. They were free to believe the testimony she proffered at trial, as opposed to that uttered before trial.

In sum, there was ample evidence of guilt, and that evidence was not so weak as to render the verdict suspect. So, the evidence was both legally and factually sufficient to support the verdict.

### *Issue Two – Jury Disqualification*

Next, appellant contends that the trial court erred when it failed to remove a juror from the panel once it was discovered that the juror knew H.D.'s father. We overrule the issue.

4

According to the record, the juror knew H.D.'s father for several months but only by the name "Bear." He did not recognize him by his actual name. Nor were the two intimately acquainted. They were simply two of a group who rode motorcycles together several times. They never discussed the case. And, when asked whether the relationship would influence his verdict, the juror answered, "I don't think so." He also replied "[y]es, sir" to the question of whether he (the juror) could decide the case based upon what was heard in the courtroom as opposed to anything he "may know about" the victim's father "or any conversation [the juror] may have had . . . regarding this situation[.]" Finally, when asked if he was "friends with [H.D.'s father] enough that it would influence . . ." him, the juror said "no."

The decision to remove or retain a juror lies within the discretion of the trial court. *Anderson v. State*, 633 S.W.2d 851, 853-54 (Tex. Crim. App. 1982). Moreover, neither a juror's friendship or intimate acquaintance with a witness alone is sufficient to warrant disqualification from the panel. *Id*. Given *Anderson*, the evidence of the sporadic and attenuated relationship between H.D.'s father and the juror, and the juror's responses to the trial court, we cannot say that the trial court abused its discretion in opting to retain him on the panel.

### *Issue One – Extraneous Conviction*

Next, appellant alleged that the trial court erred in admitting evidence of his 1999 conviction for indecency with a child during the guilt/innocence phase of the trial. The evidence purportedly was inadmissible under Texas Rules of Evidence 401, 403, and 404. We sustain the issue.

5

The pertinent standard of review is one of abused discretion. In other words, we cannot interfere with the trial court's decision to admit the evidence unless it fell outside the zone of reasonable disagreement. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1990); *Winn v. State*, 937 S.W.2d 124, 127 (Tex. App.–Amarillo 1996, no pet.).

Next, that the evidence in question constituted an extraneous offense is beyond doubt. Thus, to be admissible, it must be relevant for reasons other than suggesting that the appellant acted in conformance with his character. *Alba v. State*, 905 S.W.2d 581, 585 (Tex. Crim. App. 1995) (so stating). And, to be relevant, the evidence need only provide a "small nudge" toward proving or disproving a fact of some consequence. *Stewart v. State*, 129 S.W.3d 93, 96 (Tex. Crim. App. 2004); *Levario v. State*, 964 S.W.2d 290, 297 (Tex. App.–El Paso 1997, no pet.). Finally, such evidence, if shown to be relevant, may still be excluded if its prejudicial impact is greater than its probative value. *Alba v. State*, 905 S.W.2d at 585. With this said, we turn to the case before us.

As previously mentioned, the disputed evidence consisted of appellant's 1999 conviction for indecency with a child. The indecency involved his touching the vagina of a four- year-old girl. According to the child, appellant "was tickling her with his finger." The act resulted in a small "oozing abrasion" within her genitalia. This evidence was deemed relevant by the State because it purportedly indicated that appellant had the specific intent to sexually assault H.D. as well. How or why it did, however, went unexplained below and on appeal. Nor is the link between appellant's prior conviction and *mens rea viz* H.D. readily discernible to us. Of course, one could say that because he did it in the past, he

6

must have desired to do it again; yet, that is simply invoking the concept of character conformity which cannot legally be done.

Nonetheless, it cannot be denied that under certain circumstances prior bad acts could elucidate the *mens rea* of the accused when committing a subsequent act. For that reason the conviction at issue here may indeed be relevant. Yet, that still does not make it admissible for several reasons.[3]

First, the evidence was unnecessary. An adult male touching the outside genitalia of a ten-year-old child three times after directing her to sit on his lap (once her parents left the house) and then asking "why" when told to stop by the child,[4] itself tends to suggest what he had on his mind. Simply put, the acts speak for themselves and provide basis (if believed) for one to reasonably infer that appellant consciously sought to fondle H.D.'s sex organ. And, because the acts speak for themselves, any suggestion that the extraneous crime was needed to prove appellant's specific intent to assault rings hollow. *See Kiser v. State*, 893 S.W.2d 277, 282 (Tex. App.–Houston [1st Dist.] 1995, pet. ref'd) (holding that the State had no need to present evidence of the extraneous offense for purposes of establishing the intent behind the defendant's sexually assaulting and choking the complainant because his intent was evident from the conduct itself).

Second, the probative value of the extraneous conviction was substantially outweighed by its prejudicial impact. *See* TEX. R. EVID. 403 (stating that "although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger

---

[3]In so stating, we recognize a distinction between relevance and admissibility. To be admissible, evidence must be relevant, but not all relevant evidence is admissible.

[4]H.D. testified to appellant so acting and responding.

7

of unfair prejudice, confusion of the issues, or misleading the jury, . . . ."). It cannot be disputed that sexually- related misconduct and misconduct involving a child are inherently inflammatory. *Montgomery v. State*, 810 S.W.2d at 397; *Booker v. State*, 103 S.W.3d 521, 535 (Tex. App.–Fort Worth 2003, pet. ref'd). So, it can be said that appellant's prior conviction for indecency with a child had the potential for improperly influencing the jury. Furthermore, two witnesses were called by the State for no reason other than to develop the prior conviction. So, it cannot be said that little attention was focused upon the extraneous crime, and this enhanced the potential for the evidence improperly influencing the jury.

We further note that the child testified at trial that appellant placed his hands under her shorts and touched the outside of her vagina approximately three times while tickling her. So, while the evidence of appellant's guilt was contradicted by the victim herself,[5] ample evidence nonetheless existed to support conviction. This, in turn, meant that the need for the evidence of appellant's prior conviction was slight.

Additionally, the purported relevance of the prior conviction was fairly dependent upon concluding that appellant's actions surrounding that conviction were similar to those involved in the current prosecution. That is, it was not simply the fact that appellant inserted his finger into the vagina of his prior victim that was purportedly indicative of his intent to assault her. Rather, it was because he was supposedly tickling the prior victim when he assaulted her that made it relevant to the issue of appellant's intentions at bar. Thus, the evidence was used in a way to illustrate a *modus operandi*, one could say. Yet,

---

[5]When initially interviewed by third parties at the Bridge, the girl denied being touched by appellant on the vagina. Instead, he allegedly tickled her around her hips and stomach, and she left his lap before he could touch her "privates."

that he assaulted the four-year-old while tickling her was itself far from clear. Indeed, the evidence used to arrive at the inference consisted of nothing more than a single sentence purportedly uttered by the victim's mother while the victim was undergoing a medical examination. Via that sentence, the mother reiterated what the victim allegedly told her, that is, that appellant was tickling or tickled her.[6] Whether this meant that he was doing so as a prelude to the assault or whether the assault itself consisted of appellant's touching the child's sex organ in a manner that tickled is unknown. It could well have been the latter for not only did the four-year-old describe the swabbing of her vagina by medical personnel during her examination as tickling, but one of the witnesses used at bar to illustrate the prior conviction conceded that the child could have so meant. And, if it was the latter then the similarities between the prior conviction and current accusation would be further minimized. So, use of the prior conviction was fraught with the risk of confusion or misinterpretation of fact due to the conjecture surrounding what the child actually meant, and this, in turn, further minimized the relevance of the extraneous conviction.

The circumstances of which we just spoke are factors to be weighed in assessing whether relevant evidence can nonetheless be excluded via Texas Rule of Evidence 403. *See Montgomery v. State*, *supra* (so holding). In weighing them at bar, we cannot but conclude that they preponderate in favor of excluding the evidence of appellant's prior conviction. Its probative value was far outweighed by its potential to confuse the jurors or otherwise induce them to convict for reasons other than actual guilt. As previously noted, crimes of a sexual nature involving children are inherently inflammatory. And, while sexual

---

[6]Neither party addressed the potential hearsay nature of the mother's statement.

9

predation of our children must not be countenanced, caution must be used to avoid again convicting a defendant simply because he may have committed a crime before.

In short, admitting appellant's prior conviction was error. Yet, that does not end our inquiry for we must now assess whether the error harmed him. That analysis is conducted within the framework of Texas Rule of Appellate Procedure 44.2(b). Per the latter rule, error may be ignored unless it affects a right of the accused. Next, it so affects a right when it substantially and injuriously influences the jury's verdict. *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App.1997) (citing *Kotteakos v. United States*, 328 U.S. 750, 776, 66 S.Ct. 1239, 1253, 90 L.Ed. 1557 (1946)); *Coggeshall v. State*, 961 S.W.2d 639, 643 (Tex. App.–Fort Worth 1998, pet. ref'd). And, to determine whether that likelihood exists depends upon a review of the entire record and the reasonable inferences that can be extrapolated from it. *See Johnson v. State*, 967 S.W.2d 410, 417 (Tex. Crim. App. 1998). This, in turn, obligates us to not only weigh the evidence of appellant's guilt but also assess the character of the error, the connection between the inadmissible evidence and other evidence, and its emphasis by the State. *See Motilla v. State*, 78 S.W.3d 352, 358-59 (Tex. Crim. App. 2002).

Regarding the quantum of evidence illustrating appellant's guilt, enough was there to support conviction. But, as previously noted, it was not free of contradiction. Moreover, the comments of the victim herself resurrected the contradiction. And, since there were no witnesses to the incident save for H.D. and appellant, it is difficult to say that the evidence of appellant's guilt was overwhelming. Next, and as mentioned before, the error involved the introduction of evidence that was inherently inflammatory. And, while the trial

10

court instructed the jury to consider it only for a limited purpose, its relevance to that purpose, to the facts in dispute, and to the other evidence was quite suspect. In other words, if the jury did heed the trial court's admonishment, the admonishment itself could be viewed as permitting consideration of the evidence for an improper purpose. Finally, while the State may not have mentioned appellant's prior conviction elsewhere in the guilt/innocence phase of the trial, two of the five prosecution witnesses were used solely to prove it. Thus, it cannot be reasonably disputed that the inadmissible evidence garnered attention. So, from this amalgam, we cannot discount the likelihood that appellant's prior conviction substantially influenced his current conviction.

Simply put, there was enough evidence to warrant conviction without use of the extraneous conviction. Yet, that is not the test mandated by our Court of Criminal Appeals for the evidence of guilt must be overwhelming. *See Motilla v. State, supra*. And, since it was not here, we have little choice but to recognize the high likelihood that the prior conviction influenced one or more of the jurors. So, appellant was harmed by its admission.

Having sustained appellant's first issue, we reverse the judgment and remand the cause for further proceedings.

Brian Quinn
Chief Justice

Publish.

11