NO. 07-08-0076-CR
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â NO. 07-08-0077-CR
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL B

DECEMBER 30, 2008
______________________________

ARNALDO ORTIZ, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellant

v.

THE STATE OF TEXAS, 

Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Appellee
_________________________________

FROM THE 46TH DISTRICT COURT OF WILBARGER COUNTY;

NOS. 10,937 & 11,009; HON. DAN MIKE BIRD, PRESIDING
_______________________________

Memorandum Opinion
__________________________________

Before QUINN, C.J., and CAMPBELL and HANCOCK, JJ.
Â Â Â Â Â Â Â Â Â Â Arnaldo Ortiz was convicted of two charges of aggravated sexual assault of his
foster daughter.


 He challenges those convictions by contending that the evidence is
legally and factually insufficient to sustain them. We affirm.
Â Â Â Â Â Â Â Â Â Â The standards by which we review the legal and factual sufficiency of the evidence
are well established. We refer the parties to Jackson v. Virginia, 443 U.S. 307, 99 S.Ct.
2781, 61 L.Ed.2d 560 (1979) and Watson v. State, 204 S.W.3d 404 (Tex. Crim. App. 2006)
for a discussion of them. 
Â Â Â Â Â Â Â Â Â Â Next, the State charged appellant with causing the penetration of M.V.âs sexual
organ with his finger and her anus with his penis. At trial, the complainant testified that
appellant had done both of these acts. The testimony of a child victim alone, if believed
by the trier of fact, is sufficient to sustain the conviction. Bjorgaard v. State, 220 S.W.3d
555, 559 (Tex. App.âAmarillo 2007, pet. dismâd). Consequently, the record contains some
evidence upon which a rational factfinder could conclude, beyond reasonable doubt, that
appellant committed the offenses at issue. 
Â Â Â Â Â Â Â Â Â Â However, appellant argues that because his child victim had a sexually transmitted
disease in her vaginal area, that he did not have a like disease at the time of testing, and
that no evidence appears of record suggesting that he had vaginal intercourse with the
child, his convictions lack the support of factually sufficient evidence. We disagree for
testimony appears of record illustrating that appellant and his wife had twice suffered from
the same disease contracted by the child, that the disease will cure itself in time without
medication, that men can be asymptomatic carriers of it, that it can be passed through anal
intercourse, and that the victimâs rectum was dilated (which condition may be indicative of
anal sexual abuse). This evidence when combined with the complainantâs testimony that
appellant was the person who assaulted her was enough to rationally explain why
appellantâs negative test does not overcome or otherwise negate that quantum of evidence
establishing his guilt. In other words, the juryâs finding is not so against the great weight
of the evidence as to be unjust; nor is it supported only by weak evidence. 
Â Â Â Â Â Â Â Â Â Â According, we hold that the verdicts have the support of both legally and factually
sufficient evidence and affirm the judgments.
Â 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Brian Quinn 
Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Â Chief Justice 
Â 
Do not publish.



nc., 849 S.W.2d at 803; Tanner v. Karnavas, 86 S.W.3d at 740-41. Those nonhuman
conditions include acts of mother nature (e.g. snow, ice, sleet, fog, and the like) which
cause hazardous conditions or obstruct one's view or when someone incapable of
negligence due to age causes the harm. Id.; but see, Williams v. Viswanathan, supra (a
medical malpractice case wherein the condition of the child's lungs, as opposed to the
negligence of the treating physician, allegedly caused the child's death). When there is
no evidence that the occurrence was caused by such a condition, instructing the jury on
the matter is generally improper. Hill v. Winn Dixie Texas, Inc., 849 S.W.2d at 803. 
Conversely, when there is evidence of that ilk, then the trial court may properly submit the
instruction. So, our task at hand is to review the record in a light most favorable to the trial
court's decision at bar and with an eye towards "ascertaining whether or not there is
presented a theory under which the accident could have happened, notwithstanding [that]
all the parties to the transaction . . . exercised the degree of care required by law." 
Kuykendall v. Doose, 260 S.W.2d at 436. 

 Some evidence at bar illustrates that the cattle which McWilliams encountered were
originally within a fenced pasture abutting the highway. Several witnesses testified that
the fencing and gates were built in a manner capable of retaining cattle and were in good
repair prior to the time the bovine escaped. They apparently escaped by trampling upon
a gate. Furthermore, it is undisputed that a winter storm front had moved into the area
prior to the accident. With it came near freezing temperatures, blowing wind, rain, snow,
mist, and possibly ice. And, it was through these conditions that McWilliams and
Masterson drove their respective vehicles. 

 Other evidence illustrates that the same wintry conditions induced the Gabels' cattle
to move about in an attempt to escape the chill. This is instinctive on their part, according
to a witness. Their "instinct becomes very strong to move and move away and move with
the storm . . . [t]hey will move until they come into an object and they'll keep pushing and
pressing until they go through that object or over it or fall down and die, one or the other,"
he continued. Another witness stated that cattle do not always look for the weakest point
in a fence when they attempt to escape. "They can get out anywhere they want to," he
opined. "If a cow wants to get out they're going to get out." This was "[e]specially [so] in
a snowstorm, if you have got big numbers pushing on anything, they will get out the
strongest point or they can get out the weakest point, just where ever they wad up." When
asked if it was reasonable for a cattle owner to place someone by the fence during the
storm to monitor the activity of the cattle, a third witness opined that it was not. After cattle
have been checked several times during storm conditions and it was found that the fences
and gates were up and the cattle had "grazing" and water, a "reasonable cattleman" would
not know "that the cattle might break wire on a gate or get out of the pasture." Nor would
a "reasonable cattleman" be expected to stay with the cattle based upon the chance that
the cattle might escape, he continued. This same witness also stated that "[i]t's hard to
keep cattle in a storm" and "[w]henever they go to pushing up in a corner, I don't care what
kind of fence you got . . . if that wind keeps blowing and you've got enough number in
there, they're going to push through about anything." (3) After the cattle left their confines,
some entered onto the adjacent highway. It was one or more of those that McWilliams hit. (4) 

 Next, evidence appears of record illustrating that upon hitting the cattle, McWilliams'
vehicle ventured into the right-hand lane in which Masterson drove. Masterson had begun
to apply his brakes when he first saw the cattle. And, upon seeing the McWilliams' vehicle
enter his lane, he also attempted to steer his rig to the right. An expert estimated that the
range of time that lapsed between McWilliams first hitting the cattle and Masterson striking
McWilliams' vehicle was from 3.8 to 7.5 seconds. So too did he opine that if the incident
occurred within the 3.8 second range, then Masterson could not have avoided the
McWilliams vehicle. If it occurred closer to the 7.5 second range then "probably, yes" he
could have avoided the accident. When asked about another expert's conclusion that
Masterson could have prevented the collision, the witness also stated that "I don't believe
its possible to make conclusions that absolutely that Mr. Masterson could have avoided
the collision." Counsel also asked the witness if he had an opinion as to the cause of the
accident. The witness answered that he did. He believed the cause of the accident was
the cattle on the highway. 

 That the fences and gates were in good repair and capable of holding cattle, that
a winter storm had swallowed the area for some time, that cattle instinctively attempt to
escape such storms by moving with the storm, that the highway lay in the path of the
storm, that little can hold cattle when they opt to escape, that the conditions at the time of
the collision were dark and wintry, that the cattle were on the highway due to the storm and
their instinctive reaction to it, that the cattle could well have escaped regardless of any
precautions which could have been undertaken by the Gabels, that both McWilliams and
Masterson were operating their respective vehicles within applicable traffic regulations,
that McWilliams struck a cow while lawfully attempting to pass Masterson, that seconds
lapsed before Masterson's eighteen wheeler hit McWilliams' vehicle, and that Masterson
may not have been able to avoid the collision depending upon how many seconds lapsed
is evidence from which a reasonable jury could deduce that the collision was a trick of fate
and not the result of any human being's negligence. It is some evidence of "a theory under
which the accident could have happened, notwithstanding [that] all the parties to the
transaction . . . exercised the degree of care required by law." Kuykendall v. Doose, 260
S.W.2d at 436. And, though there was evidence to the contrary, that does not matter. 
Again, the standard of review obligates us to view the evidence in a light most favorable
to the submission of the issue. So, evidence that may urge against submission of the
issue is irrelevant. 

 In sum, the trial court's decision to submit the issue enjoyed support in the
evidence. Thus, it did not abuse its discretion when it did so. 

 Act of God

 Next, McWilliams and the other appellants questioned the propriety of instructing
the jury about an act of God. They believed that the trial court erred because 1) the
instruction was duplicative of that on unavoidable accident and, thus, amounted to a
comment on the weight of the evidence, and 2) there was no evidence that the incident
was caused directly and exclusively by the violence of nature without human intervention
or cause, "which [was] an evidentiary predicate for the submission . . . ." We disagree. 

 We address the last contention first. It has long been the rule that one is not
responsible for injury or loss caused by an act of God. Gulf, C. & S. F. Ry Co. v. Texas
Star Flour Mills, 143 S.W. 1179, 1182 (Tex. Civ. App.-Galveston 1912, no writ). 
Furthermore, an event may be considered an act of God when it is occasioned exclusively
by the violence of nature. Travelers Ins. Co. v. Williams, 378 S.W.2d 110, 113 (Tex. Civ.
App.-Amarillo 1964, writ ref'd n.r.e.); Gulf, C. & S. F. Ry Co. v. Texas Star Flour Mills, 143
S.W. at 1182. And, for one to be insulated from liability, it must be shown that 1) the loss
was due directly and exclusively to an act of nature and without human intervention, and
2) no amount of foresight or care which could have been reasonably required of the
defendant could have prevented the injury. Id. Furthermore, the act of nature must be
unusual or unprecedented. Yet, it need not be the sole, greatest, or harshest violent act
ever experienced. Gulf, C. & S. F. Ry Co. v. Texas Star Flour Mills, 143 S.W. at 1182. 
Instead, it need only be so unusual that it could not have been reasonably expected or
provided against. Id. 

 Turning to the record before us we again encounter that evidence which supported
the trial court's decision to instruct the jury on unavoidable accident, e.g. the time of night,
the presence of a winter storm, the cattle's instinctive reaction to the storm, their penchant
to escape irrespective of the quality of the fence and gate in which they were confined, the
lawful operation by McWilliams and Masterson of their respective vehicles at the time, the
inability of Masterson to avoid the accident depending upon the number of seconds that
transpired, and the like. To it we add the evidence that the winter storm occurred on the
25th day of April, 1997. Furthermore, a local meteorologist testified that as much as 12
inches of snow may have fallen in the area and that it may have been snowing at a
moderate to heavy rate at the time of the accident. So too did he state that the time of year
at which the storm occurred was shocking or surprising to weathermen, though through the
years five other storms had been as late or later. Apparently, at least one weatherman
was surprised "that . . . this particular storm happened so late and was as strong as it was." 
Moreover, by the time this storm entered the area, the cattle had slicked off or shed their
natural winter hair. This is of import because had they had their winter coat, they could
have better fared the storm. The foregoing constitutes some evidence of a violent act of
nature directly and exclusively, without human intervention, causing loss and which act
one could not reasonably foresee or prevent its effects. Thus, we conclude that the court's
decision to submit the instruction about an act of God was supported by the evidence.

 Nevertheless, McWilliams argues that human agency or intervention was indeed
involved. The human agency contemplated was that represented by Masterson driving the
truck and ultimately striking McWilliams with it. True, a vehicle operated by a human
struck McWilliams. Yet, what is meant by allusion to the absence of human intervention
is not the absence of all human involvement but the absence of human negligence
proximately causing the injury. That this is true is exemplified by the opinion in Luther
Transfer & Storage, Inc. v. Walton, 296 S.W.2d 750 (Tex. 1956). There, the Texas
Supreme Court declared that "for a defendant to be relieved of liability for an
unprecedented flood, there must be no negligence of the defendant concurring with the
act of God to cause the damage resulting." Id. at 753; accord, Macedonia Baptist Church
v. Gibson, 833 S.W.2d 557, 560 (Tex. App.-Texarkana 1992, writ denied) (holding that the
injuries were not caused by an act of God since the lightning was channeled through an
improperly installed lightning protection system). So, that a human may have been
involved does not matter as long as his negligence, if any, did not also cause the injury. 
And, as previously discussed, evidence appears of record which reasonably permitted the
factfinder to conclude (assuming it chose to believe it) that neither the Gabels nor
Masterson were negligent or, if negligent, their negligence was not a concurring or
proximate cause of the loss. 

 So too does McWilliams question the propriety of the instruction because the
weather purportedly was not a direct cause of Masterson colliding with McWilliams. He
believes that the effect of the weather "ended when the cattle went through the gate." At
that point, their own instincts took over. Yet, McWilliams cites us to no authority
explaining what constitutes a direct cause. Nor does he argue that it is something other
than the cause implicit in the idea of proximate cause. Moreover, we see no reason to
conclude that the nexus involved in each should be different. So, we will treat them as the
same.

 Next, to satisfy the causal element of proximate cause, it need only be a substantial
factor in bringing about the harm. Southwest Key Prog., Inc. v. Gil-Perez, 81 S.W.3d 269,
274 (Tex. 2002). Furthermore, to be a substantial factor, it is not necessary that the act
giving rise to the injury be the one nearest the injury. Atchison v. Texas & P Ry., 186
S.W.2d 228, 231 (Tex. 1945). Nor must it be the only act involved. Rather, it can be one
of several events in a natural and continuous sequence of events which produces a
particular result and without which the result would not have occurred. See Lear Siegler,
Inc. v. Perez, 819 S.W.2d 470, 471 (Tex. 1991) (stating that conduct is a cause if in a
natural and continuous sequence it produces an event and without it the event would not
have occurred). Stated differently, if it "set in motion a natural and unbroken chain of
events that led directly and proximately . . ." to a particular result, then the conduct or act
legally caused the result. Hart v. VanZandt, 399 S.W.2d 791, 793 (Tex. 1965). 

 Here, evidence appeared of record that the unusual winter storm not only triggered
the instinctive nature of the cattle but also combined with that instinct to herd the cattle in
the direction of the highway. According to at least one witness, cattle instinctively move
with a storm. For instance, if a storm blows from the north to the south, the cattle will head
south with the storm. Thus, a storm can be compared to a herdsman leading the cattle
along in its path. And, at bar, the storm was proceeding in a direction towards (and
consequently driving the cattle towards) the highway on which McWilliams and Masterson
drove, or at least some evidence of record so indicates. 

 Next, no one could reasonably deny that if a herdsman drove cattle onto a roadway
and a car hit one of the herd, then the herdsman's conduct was a substantial factor in
bringing about the collision. We see no reason to reach a different conclusion when an
act of God substitutes itself as the herdsman. In both situations the cattle move per the
direction of the herdsman. And, if those directions lead one or more of the herd onto a
roadway, then a factfinder may reasonably deduce that the directions of the herdsman
constituted a substantial factor in bringing about the presence of the cattle onto the
roadway. In sum, there existed some evidence of a direct causal link, which evidence was
sufficient to warrant the instruction given by the trial court.

 Finally, McWilliams posits that the jury should not have been instructed about an
act of God since the instruction, when coupled with that involving unavoidable accident,
constituted a comment on the weight of the evidence and nudged the jurors towards a
particular result. (5) Furthermore, he cites our opinion in Williams v. Viswanathan as support
for the proposition. We disagree. Though an argument akin to that at bar was asserted
in Viswanathan, nowhere in that opinion did we accept the proposition. Instead, we held
that because evidence supported the submission of each instruction and the appellant
provided us with no authority supporting the suggestion "that the submission of both issues
had a cumulative erroneous effect," the trial court did not err by instructing the jury on both
theories. Williams v. Viswanathan, 64 S.W.3d at 630-31. That is the situation here. 
Submission of each instruction was supported by the evidence, and McWilliams cited us
to no authority holding that submission of both instructions constituted an unwarranted
comment on the evidence. So, our ruling in Viswanathan is no less applicable here.

 In conclusion, the trial court did not err by instructing the jury about unavoidable
accident and act of God. We overrule McWilliams' sole issue and affirm the judgment of
the trial court.

 Brian Quinn

 Justice


1. John T. Boyd, Chief Justice (Ret.), Seventh Court of Appeals, sitting by assignment. Tex. Gov't
Code Ann. §75.002(a)(1) (Vernon Supp. 2003). 
2. Paul Gabel and Kent Gabel were dismissed from this appeal in result of an unopposed motion filed
by appellants with this court on September 27, 2002.
3. Another witness described seeing cattle, at one time, push on a six-wire fence with steel posts until
it was about to give way. Rather than allow the cattle to break the fence, the witness opted to cut it in several
places as means of providing egress to the bovine. 
4. A witness testified that McWilliams could have hit up to three head of cattle, given the evidence
found at the scene and on the vehicle. 
5. The comment, according to McWilliams, was the suggestion that the jury should relieve the
defendants of liability because the availability of all these theories indicated that the defendants did not
cause the injury.