**Christopher Lindsey DEWBERRY, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 09–97–314CR.**

Court of Appeals of Texas, Beaumont.

Submitted Oct. 7, 1998.

Decided Dec. 9, 1998.

**872**

Douglas M. Barlow, Beaumont, for appellant.

Tom Maness, Crim. Dist. Atty., Rodney D. Conerly, Asst. Crim. Dist. Atty., Beaumont, for state.

Before WALKER, C.J., BURGESS, and STOVER, JJ.

## OPINION

DON BURGESS, Justice.

A jury convicted Christopher Lindsey Dewberry of capital murder for causing the death of Elmer Rode, while in the course of committing and attempting to commit robbery of Elmer Rode. The court sentenced Dewberry to confinement for life in the Texas Department of Criminal Justice—Institutional Division. He appeals raising five issues.

Dewberry's first issue claims the trial court erred in refusing to charge the jury on the defense of alibi. Dewberry points to evidence that he was with Leanne Lyons the day of the murder and thus could not have committed the offense.

■ A recent decision by the Court of Criminal Appeals is directly on point. *Gies-*

*berg v. State,* No. 696–97, —— S.W.2d ——, 1998 WL 670415 (Tex.Crim.App. Sept.30, 1998). Giesberg argued he was entitled to a jury instruction on the defensive issue of alibi as there was evidence he was not present at the scene of the crime at the time the State alleged the murder occurred. *Id.* slip op. at 2–3, at ——————, 1998 WL 670415, at *1–2. The court in *Giesberg* found the trial court did not err in denying appellant's request for a jury instruction on the defensive theory of alibi because it is not a defense recognized by the Legislature as either a defense or an affirmative defense and therefore does not warrant a separate instruction. *Id.* slip op. at 15, at ——, 1998 WL 670415, at *7. Further, the court stated, the defensive issue of alibi is adequately accounted for within a general charge to the jury and a special instruction on alibi would constitute an improper comment by the trial court on the weight of the evidence. *Id.* slip op. at 14, at ——, 1998 WL 670415, at *8. Therefore, in accordance with *Giesberg,* we overrule Dewberry's first issue.

In his second, third, and fourth issues Dewberry argues the trial court erred in allowing three witnesses for the State testify to hearsay statements by co-defendant John Dewberry[1] which inculpated Christopher Dewberry. All of the statements were admitted by the trial court as an exception to the hearsay rule under Tex.R.Crim. Evid. 803(24).

The Court of Criminal Appeals acknowledged in *Cofield v. State,* 891 S.W.2d 952, 955 (Tex.Crim.App.1994), that while Rule 803(24) provides an exception to the hearsay rule for a statement against the *declarant's* interest, it does not provide an exception "for a declarant's statement which is against *someone else's* interest, e.g. a third-party, a co-actor, or a co-defendant." The court then addressed *Williamson v. U.S.,* wherein the United States Supreme Court found, under comparable Federal Rule of Evidence 804(b)(3), the confessions of arrested accomplices may be admissible, "if they are truly self-inculpatory, rather than merely at-

tempt[ing] to shift blame or curry favor." *Id.* at 956 (quoting *Williamson v. U.S.,* 512 U.S. 594, 603, 114 S.Ct. 2431, 2436, 129 L.Ed.2d 476, 485 (1994)). The *Cofield* court noted the Supreme Court had "previously recognized that 'a codefendant's confession is presumptively unreliable as to the passages detailing the defendant's conduct or culpability because those passages may well be the product of the codefendant's desire to shift or spread blame, curry favor, avenge himself, or divert attention to another.'" *Id.* (quoting *Lee v. Illinois,* 476 U.S. 530, 545, 106 S.Ct. 2056, 2064, 90 L.Ed.2d 514, 529 (1986)). Further, the court in *Williamson* concluded non-self-inculpatory statements were not admissible even if made within a broader narrative that is generally self-inculpatory. *Id.* (citing *Williamson,* 512 U.S. at 600–01, 114 S.Ct. at 2435, 129 L.Ed.2d at 482–83).

*Cofield* found the Supreme Court's reasoning and analysis in *Williamson* persuasive noting Rule 803(24) contains similar language to Federal Rule of Evidence 804(b)(3). *Cofield* noted that while Rule 803(24) speaks of statements contrary to the declarant's interest, "as the Supreme Court acknowledged there are circumstances in which hearsay statements by a co-defendant which inculpate the defendant would be admissible against that defendant where the statement was sufficiently against the declarant's penal interest that a reasonable person in the declarant's position would not have made the statement unless believing it to be true." *Id.* (citing *Williamson,* 512 U.S. at 603–04, 114 S.Ct. at 2436–37, 129 L.Ed.2d at 484–86). The court then concluded that a hearsay statement which inculpates not only the declarant but the defendant as well may be admissible, provided corroborating circumstances exist clearly indicating the trustworthiness of the statement. *Id.*

Rule 803(24) requires corroborating circumstances clearly indicating the trustworthiness of the statement for a statement against penal interest to be admissible. *Id.* at 955. In determining the existence of corroborating circumstances, we focus our inqui-

---

1. John Dewberry, Christopher's younger brother, was convicted of capital murder in a separate trial and given the death penalty.

ry on "verifying to the greatest possible extent the trustworthiness of the statement so as to avoid the admissibility of a fabrication." *Id.* (citing *Davis v. State*, 872 S.W.2d 743, 748 (Tex.Crim.App.1994)). A number of factors may be considered in such an inquiry, including (1) whether the guilt of the declarant is inconsistent with the guilt of the defendant, (2) whether the declarant may have committed the crime, (3) the relationship between the declarant and the listener, (4) the timing of the declaration and its spontaneity, and (5) the existence of independent corroborating facts. *Cunningham v. State*, 877 S.W.2d 310, 312 (Tex.Crim.App.1994). Whether there are corroborating circumstances clearly indicating trustworthiness lies within the sound discretion of the trial court. *Id.* at 313.

Dewberry complains of testimony by witnesses Josh Vickers, Mitch King, and Steven Thrower. We address each in turn.

■ Vickers was allowed to relate statements made by John Dewberry concerning the purchase of the murder weapon, a .20 gauge shotgun. John told Vickers he wanted the gun for "a jack move," which Vickers explained meant to hijack or steal something. Applying the factors set forth above, we note (1) John's guilt is not inconsistent with Christopher's, (2) John was also convicted of the crime, (3) the statement was made to an acquaintance (Vickers) who was trying to sell a stolen gun, (4) the statement was made prior to the crime being committed, and (5) the record contains independent evidence that the victim was shot with a .20 gauge shotgun and robbed. Specifically, Mark Bilfafano saw John and Christopher on December 24, 1994, and described a sawed-off shotgun carried by John. The autopsy report established the cause of death as multiple gunshot wounds to the head. Beaumont Police Sergeant Bill Tatum testified a hole in the sheet found around the victim's head matched the large wound caused by the .20 gauge shotgun. Department of Public Safety Firearms Examiner John Beene testified the wads recovered from the offense were similar to those which would have been projected from the sawed-off shotgun. Bobby Trevino testified Christopher paged him on December 24, 1994, wanting to sell some things and brought in a .20 gauge shotgun. When Trevino asked about buying the shotgun, Christopher told Trevino he did not want that one, saying "That one's got a body on it." Christopher then showed Trevino "how they blasted him," demonstrating the kick of the shotgun. Sue Kelly, an I.D. technician for the Beaumont Police Department, testified a .20 gauge sawed-off shotgun was found in a duffel bag in a closet of the apartment where Christopher was arrested.

Bilfafano also testified he saw certain items, including VCRs, in the truck John and Christopher were driving. Christopher told him they got a couple of VCRs and some other things. Trevino testified he made a deal with Christopher for two VCRs. The police recovered a VCR from Trevino which had the same serial number as one missing from Rode's residence. This evidence independently corroborates John's statements to Vickers.

John's statements are self-inculpatory, do not include non-self-inculpatory statements, and do not detail Christopher's conduct or culpability in an attempt to shift or spread blame, curry favor, avenge himself, or divert attention to another. We are unable to say the trial court abused its discretion in admitting the hearsay statement John made to Vickers. Dewberry's second issue is overruled.

King related John's statements to him that they were going to go inside a guy's house, tie him up, and take everything. John wanted King to participate and either restrain the guy or hold the gun. John also said he wanted to kill the guy.

■ The first two factors remain the same. As to the others, (3) the relationship between John and King was such that John asked him to participate in a felony, (4) the declaration was made before the crime was committed, and (5) there is independent evidence that the crime was carried out in a manner similar to the plan John described to King. Specifically, Bilfafano testified Christopher told him "they killed somebody" and "had to tie him up." King testified Christopher told him, "We tied him up . . . and shot him." Beaumont Police Officer Daniel Hollo-

way testified he found the victim lying face down with his hands and feet tied. Bilfafano also testified he saw certain items, including VCRs in the truck John and Christopher were driving, and Christopher told him they got a couple of VCRs and some other things. Trevino testified he made a deal with Christopher for two VCRs, and a VCR recovered by police from Trevino had the same serial number as one missing from Rode's residence. This evidence corroborates John's statements to King.

Further, John's statements to King are against his interest, are not non-self-inculpatory, do not detail Christopher's conduct or culpability, and do not shift or spread blame, curry favor, avenge himself, or divert attention to another. These are circumstances which, when considered along with the factors discussed above, clearly indicate trustworthiness. We find the trial court did not abuse its discretion in admitting the hearsay statements John made to King. Issue three is overruled.

As to Thrower, the record reflects John told him that he and Christopher went to Rode's house sometime before December 25, 1994, that John tied Rode up, put a shotgun to the back of Rode's head and pulled the trigger, that he and Christopher took two VCRs out of Rode's house, and that he and Christopher drove away in Rode's truck.

Again, the first two factors are unchanged. Consideration of the third and fourth factors, however, implicate a lack of trustworthiness. John's statements to Thrower were made after he was arrested and while he was being questioned by Thrower. The relationship between John and Thrower, the timing of the statement, and the fact that it was not spontaneous, all weigh against finding the statement reliable. As the court in *Drone v. State*, 906 S.W.2d 608, 612 (Tex.App.—Austin 1995, pet. ref'd), noted, a statement admitting the declarant's guilt and implicating another, made while in custody, may be motivated by a desire to curry favor. The fifth factor, however, weighs heavily in favor of finding John's statements trustworthy. The record contains independent facts corroborating John's statements.

Bilfafano testified he saw John and Christopher December 24, 1994, in a 1994 Ford champagne-colored truck and observed certain items including VCRs in the truck. Bilfafano described the sawed-off shotgun carried by John and a .22 caliber revolver Christopher had stuck in his pants. Christopher told Bilfafano "they killed somebody" and "had to tie him up." King testified Christopher told him, "We tied him up and laid him down and put a pillow on his head and shot him." Christopher also told him they got a couple of VCRs and some other things.

A photograph of the victim's champagne-colored truck was admitted into evidence. Officer Holloway testified he found the victim lying face down on the floor with his hands tied behind his back, his feet tied, a sheet around his head, and a pillow covering his head. The autopsy report established the cause of death as multiple gunshot wounds to the head. Sergeant Tatum testified the .22 caliber bullet holes in the sheet found around the victim's head matched the wounds to the head and the large wound caused by the .20 gauge shotgun. John Beene testified the wads recovered from the offense were similar to those which would have been projected from the sawed-off shotgun, and Sue Kelly testified a .20 gauge sawed-off shotgun was found in a duffel bag in a closet of the apartment where Christopher was arrested.

Trevino testified Christopher paged him on December 24, 1994, wanting to sell two VCRs and a .22 caliber gun. Trevino traded Christopher for the .22 and VCRs and asked about the .20 gauge shotgun. Christopher told Trevino he did not want that one, "[t]hat one's got a body on it." Christopher then told Trevino they "threw a pillow over some guy" and showed Trevino "how they blasted him." The police recovered the .22 caliber pistol and a VCR from Trevino. John Beene testified two bullets taken from the victim's head were fired from the .22 caliber pistol taken from Trevino. Chief of Police at Lamar University Dale Fontenot testified the serial number on the VCR recovered from Trevino matched the serial number of the VCR missing from Rode's residence.

The evidence set forth above independently corroborates John's statements to Thrower. Further, the statements are sufficiently against his penal interest that a reasonable person in John's position would not have made the statements unless he believed them to be true. While these statements do include Christopher and detail some of his conduct, John does not shift or spread the blame for Rode's death. Rather, John claimed to be the one responsible for shooting Rode. Considering all the factors, corroborating circumstances exist which clearly indicate the trustworthiness of the statements. For these reasons, we find the hearsay statements John made to Thrower were admissible under *Cofield*. Dewberry's fourth issue is overruled.

Dewberry's fifth and final issue contends the trial court erred in admitting State's exhibits four through twelve (photographs) because the prejudicial effect outweighed the probative value. We first note that TEX. R.CRIM. EVID. 403 favors the admission of relevant evidence and presumes relevant evidence will be more probative than prejudicial. *Williams v. State*, 958 S.W.2d 186, 196 (Tex.Crim.App.1997).

When determining whether the trial court erred in admitting relevant photographs into evidence, our review is limited to determining whether the probative value of the photos is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, or needless presentation of cumulative evidence. The trial court's decision is reviewed under an abuse of discretion standard, and is disturbed on appeal only when the trial court's decision falls outside the zone of reasonable disagreement.

A court may consider many factors in determining whether the probative value of evidence is substantially outweighed by the danger of unfair prejudice. These factors include: the number of exhibits offered, their gruesomeness, their detail, their size, whether they are in color or black and white, whether they are close-up, and whether the body depicted is clothed or naked. A court, however, should not be limited by this list.

*Jones v. State*, 944 S.W.2d 642, 651 (Tex. Crim.App.1996), *cert. denied*, —— U.S. ——, 118 S.Ct. 100, 139 L.Ed.2d 54 (1997) (citations omitted).

■ There are nine photographs in question, each approximately eight by ten inches. They are in color, some are close-ups, and the body is clothed. The exhibits depict the victim, his wounds, including that he was shot in the head with two different weapons, and his tied hands and feet. Although the pictures are somewhat gruesome, they are no more gruesome than the facts of the offense itself. Because they are not repetitive, depict the wounds inflicted upon the victim, and were the subject of testimony at trial, we cannot say that the trial court abused its discretion in holding the probative value of the photographs outweighed the danger of unfair prejudice. *See Phipps v. State*, 904 S.W.2d 955 (Tex.App.—Beaumont 1995, no pet.); *Kendrick v. State*, 942 S.W.2d 120 (Tex.App.—Beaumont 1997, no pet.). Dewberry's final issue is overruled.

The judgment of the trial court is AFFIRMED.