NO. 07-08-0132-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A

FEBRUARY 23, 2009

_____

LAWYAR T. EWINGS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_____

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 54359-E; HONORABLE ABE LOPEZ, JUDGE

_____

Before CAMPBELL and HANCOCK and PIRTLE, JJ.

**MEMORANDUM OPINION**

Appellant, Lawyar T. Ewings, pled guilty to murder.[1]  During the punishment phase

of trial, he attempted to mitigate his punishment by asserting that he acted under the

---

[1]*See* Tex. Penal Code Ann. § 19.02(b) (Vernon 2003).  Except as provided by § 19.02(d), the offense of murder is punishable as a felony of the first degree.  The range of punishment for a first degree felony is imprisonment for life or for any term of not more than 99 years or less than 5 years and by a fine not to exceed $10,000. § 12.32(a) and (b).  For convenience, future provisions of the Texas Penal Code will simply be cited as "§____" or "Section ____."

influence of sudden passion arising from an adequate cause.[2]  The jury did not find Appellant caused the death under the influence of sudden passion and they sentenced him to confinement for thirty-five years.  In a single issue, Appellant contends the trial court erred by admitting photographs of the crime scene and the victim's injuries that were irrelevant, inflammatory, repetitious, and more prejudicial than probative.  We affirm.

## Background

Appellant and Jessica Termain were involved in an ongoing relationship for a number of years during which he supplied her with money and/or drugs in return for sex. Although Appellant was aware that she also traded sex with other men for money and/or drugs, he was not bothered so long as she did not show affection toward other men in his presence.  Nevertheless, their relationship was troubled by her addiction and prostitution which were a constant source of discord between them.

On September 15, 2006, Appellant and Felicia Mahone, his cousin, went to the Wishing Well Bar at approximately 1:00 p.m.  At the bar, they met Termain and Appellant purchased crack cocaine at her request.  Before leaving the bar, Appellant and Termain argued about where she was going to stay.  Appellant wanted her to go with him and she wanted to remain at the bar.  Later, at dusk, Termain accompanied Mahone and Appellant

[2]See Tex. Penal Code Ann. § 19.02(d) (Vernon 2003).  If, at the punishment phase of a trial, the defendant proves by a preponderance of the evidence that the death was caused under the immediate influence of sudden passion arising from an adequate cause, then the offense is punishable as a felony of the second degree. The range of punishment for a second degree felony is imprisonment for any term of not more than 20 years or less than 2 years and by a fine not to exceed $10,000.  § 12.33(a) and (b).

2

to his apartment where she smoked crack while Appellant and Mahone continued drinking. Appellant and Termain also continued to argue about where she would be staying. Termain wanted a ride across town. Before departing, Appellant placed his loaded, twelve gauge shotgun in the backseat of his truck.

Later that evening, Appellant and Mahone returned to the Wishing Well. As he drove up, Appellant observed Termain kissing Billy Ray. He became upset because he had bought crack for her and she was with another man. When he approached to speak with her, she told him to get away and leave her alone. Appellant walked away for a time but returned and said: "Bitch, you mess with too many men, you're trying to get somebody killed." Appellant and Mahone then left the Wishing Well and drove to another bar where they continued drinking.

Early in the morning of September 16, Appellant returned to the Wishing Well looking for Termain. He pulled his truck into a parking area adjacent to a site where homeless people camped out across the street from the Wishing Well and observed Termain sitting on a mattress across from Larry Frazier, a homeless man. He "[didn't] know if they were making out," but "[he] thought they might be making out . . . because of the way they were laying together . . . [i]t was suspicious to [him]." He also observed Termain was not wearing the same shirt she was wearing when she left his apartment earlier that night.

3

Appellant got out of his truck and retrieved the loaded shotgun from the back seat. He walked over to where Termain was sitting and made an angry utterance.[3] Termain said nothing. He then leveled the shotgun at her face, leaned in, and pulled the trigger.

During the punishment phase of trial, Appellant testified as follows:

DEFENSE COUNSEL: Why did you do that [shoot Termain]?

APPELLANT: I don't know. Man, I just flipped. I don't know what happened.

DEFENSE COUNSEL: What made you flip?

APPELLANT: I guess it was Billy Ray. Everybody else, you know what I'm talking about? This . . . Too much pressure out there.

DEFENSE COUNSEL: If you didn't go there to kill her, what was it about seeing her without her shirt on with [Frazier] that changed all that?

APPELLANT: Oh, I really don't know. I was just tired. You know, being misused and abused. It just hit me all at once, you know. Any way in the world that I'd kill that girl.

Appellant placed his shotgun back in the truck and Mahone drove him home. Less than an hour after the shooting, Appellant called the police from a pay phone. He told the dispatcher that he thought he had "just killed someone" and that he believed he was dreaming. Shortly thereafter, he was taken into custody, confessed to shooting Termain, and signed a written statement.

---

[3]Mahone testified that, immediately prior to the shooting, Appellant said, "Didn't I say you were going to respect me?" Frazier testified that Appellant said, "Bitch, I told you if you fucked me over one more time I would blow your head off."

Prior to commencing the punishment phase of trial, the trial court conducted a hearing to determine whether to exclude certain photographs of the crime scene and Termain's injuries that the State intended to present to the jury. Appellant's counsel contended that certain photographs were repetitious, inflammatory, and more prejudicial than probative. The trial court noted that the photographs contained gore and excluded a number of them. The jury subsequently assessed punishment at confinement for thirty-five years.

**Discussion**

Appellant asserts that the photographs unfairly prejudiced the jury and resulted in a sentence that fell within the punishment range applicable to a conviction for first degree felony murder rather than second degree felony murder. In support, he contends the photographs were irrelevant because, due to his guilty plea, any issues of cause and manner of death were undisputed and the evidence was cumulative because the State offered testimonial evidence related to the crime scene and Termain's injuries. He also contends the photographs were more prejudicial than probative because of their gruesome nature and repetitive presentment.

**I.     Standard of Review**

The admissibility of a photograph is within the sound discretion of the trial judge. *Paredes v. State*, 129 S.W.3d 530, 539 (Tex.Crim.App. 2004). We will not disturb a trial

court's ruling admitting or excluding evidence so long as the trial court's decision falls within the "zone of reasonable disagreement." *See Jones v. State,* 944 S.W.2d 642, 651 (Tex.Crim.App. 1996).

## II.    Relevance

A trial court has wide discretion in deciding the admissibility of evidence presented at the punishment phase of trial. *Henderson v. State*, 29 S.W.3d 616, 626 (Tex.App.–Houston [1ˢᵗ Dist.] 2000, pet. ref'd). The Texas Code of Criminal Procedure provides that, whether punishment is assessed by the trial judge or the jury, the circumstances of the offense for which the defendant is tried may be considered. Tex. Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2007). Further, the State's right to introduce evidence during the punishment phase of trial is not restricted by the entry of a plea by the defendant or an admission of facts sought to be proved by the State. *York v. State*, 566 S.W.2d 936, 938 (Tex.Crim.App. 1978).

Here, the photographs of the crime scene and victim were probative of the circumstances related to the shooting and the nature of the fatal wound Appellant inflicted on Termain. As such, they were relevant, or helpful, to the jury in tailoring an appropriate sentence for Appellant. *See Williams v. State*, 176 S.W.3d 476, 481 (Tex.App.–Houston [1ˢᵗ Dist.] 2004, no pet.). This is particularly so because Appellant asserted that he caused Termain's death under the immediate influence of sudden passion arising from an

6

adequate cause.[4]   That the jury also heard testimony regarding the injuries depicted by the photographs did not necessarily reduce the relevance of the visual depiction.  *See Shuffield v. State,* 189 S.W.3d 782, 787 (Tex.Crim.App. 2006), *cert. denied*, 549 U.S. 1056, 127 S.Ct. 664, 166 L.Ed.2d 521 (2007).  Accordingly, we find the trial court correctly determined that the photographs were relevant "to enable the jury to intelligently exercise their discretion which the law vests in them to assess [Appellant's] penalty." *York*, 566 S.W.2d at 938.  We must next determine whether the photographs were more prejudicial than probative.

### III.    Unfair Prejudice

Relevant evidence may be excluded if "its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the

---

[4]§ 19.02 states, in pertinent part, as follows:

(a) In this section:

(1) "Adequate cause" means cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection.

(2) "Sudden passion" means passion directly caused by and arising out of provocation by the individual killed or another acting with the person killed which passion arises at the time of the offense and is not solely the result of former provocation.

*     *     *

(d) At the punishment stage of the trial, the defendant may raise the issue as to whether he caused the death under the immediate influence of sudden passion arising from an adequate cause.  If the defendant proves the issue in the affirmative by a preponderance of the evidence, the offense is a felony of the second degree.

jury, or by considerations of undue delay, or needless presentation of cumulative evidence." See Tex. R. Evid. 403. We consider the following four factors when reviewing a trial court's evidentiary ruling under Rule 403: (1) the probative value of the evidence; (2) the potential to impress the jury in some irrational, yet indelible way; (3) the time needed to develop the evidence; and (4) the proponent's need for the evidence. *Erazo v. State*, 144 S.W.3d 487, 489 (Tex.Crim.App. 2004). We also consider the number of photographs, the size, whether they are in color or black and white, whether they are gruesome, whether any bodies are clothed or naked, and whether the body has been altered since the crime in some way that might enhance the gruesomeness of the photograph to the appellant's detriment. *See Narvaiz v. State*, 840 S.W.2d 415, 429 (Tex.Crim.App. 1992). In sum, "[i]f there are elements of a photograph that are genuinely helpful to the jury in making its decision, the photograph is inadmissible only if the emotional and prejudicial aspects substantially outweigh the helpful aspects." *Erazo*, 144 S.W.3d at 491-92.

Appellant objects to thirty-four color photographs admitted as State's Exhibits 43-48, 50, 52-67, 69, 71, 73-74, 78-83, 85 and 87. The photographs were admitted into evidence in conjunction with the testimony of Jimmy Rifenberg, the Amarillo Police Department crime scene investigator who documented the crime scene and Termain's injuries and were briefly published to the jury by projection onto a screen.[5] The photographs provided a

---

[5]Appellant did not object to this form of publication to the jury. Accordingly, any grounds for objection were waived. *See* Tex. R. App. P. 33.1(a).

logical progression leading the jury through the crime scene, assisted the jury to visualize the crime scene, showed the extent of the wounds suffered by Termain, identified the location of testifying witnesses, and depicted Termain's activities immediately prior to being shot by Appellant.[6] These and other photographs are unquestionably gruesome. They depict the location and size of the shotgun wound to Termain's head, her exposed cranium, her brain on the pavement, and brain matter, blood, and tissue material scattered throughout the crime scene.

Under the first prong of the *Erazo* test, we find the photographs had probative value because they were accurate depictions of both the crime scene and Termain's body that would assist a jury to visualize the crime scene as well as the extent of Termain's injuries caused by Appellant's criminal act. *Paredes,* 129 S.W.3d at 540 (quoting *Sonnier v. State*, 913 S.W.2d 511, 519 (Tex.Crim.App. 1995)). *See also Legate v. State,* 52 S.W.3d 797, 807 (Tex.App.–San Antonio 2001, pet. ref'd). The photographs were also probative because they corroborated the testimony of trial witnesses; *see Ledbetter v. State,* 208 S.W.3d 723, 734 (Tex.App.–Texarkana 2006, no pet.); *Moreno Denoso v. State*, 156

---

[6]Because the mitigation defense of "sudden passion" requires that the passion be caused, or arise, by provocation by the individual killed, § 19.02 (a)(2), Termain's activities immediately prior to the shooting were relevant. For instance, Appellant testified that, when he arrived at the parking lot across from the Wishing Well, he observed Termain laying on a mattress with Frazier under suspicious circumstances. Mahone testified Termain was sitting on the ground with Frazier. Frazier testified that he was talking with Termain while being seated on a stool two feet away. Rifenberg's blood spatter analysis using photographs corroborated Frazier's testimony. For instance, Exhibits 57 and 58 show a void in the blood spatters surrounding Termain indicating Frazier was seated on a nearby stool with his legs crossed, with only one foot on the ground. Photographs of Termain's body, Exhibits 71, 74 and 83, showed that she was fully clothed, held a cigarette lighter in her hand, with a pack of cigarettes, and a fast food drink cup with a straw close by.

9

S.W.3d 166, 178 (Tex.App.–Corpus Christi 2005, pet. ref'd), and their probative value is not diminished simply because they corroborate other uncontested testimony. *See Chamberlain v. State*, 998 S.W.2d 230, 237 (Tex.Crim.App. 1990) (rejecting the premise that visual evidence accompanying oral testimony is cumulative of the testimony). Although disagreeable to look at, they depict nothing more than the reality of the brutal crime committed. *Sonnier*, 913 S.W.2d at 519; *Shavers v. State*, 881 S.W.2d 67, 77 (Tex.App.–Dallas 1994, no pet.). Accordingly, this first factor weighs in favor of admissibility.

In determining the second factor, we look at the photographs' potential to impress the jury in some irrational, yet indelible way. *See Erazo*, 144 S.W.3d at 491-92. "If a photograph is competent, material and relevant to the issue on trial, it is not rendered inadmissible merely because it is gruesome or might tend to arouse the passions of the jury, unless it is offered solely to inflame the minds of the jury*." Id.* (*quoting Martin v. State*, 475 S.W.2d 265, 267 (Tex.Crim.App. 1972)). Appellant does not claim that the pictures are inaccurate or improperly enhanced. Having considered the photographs in relation to the entire record, we cannot conclude the images appealed only to the juror's emotional side and that the jury's decision was based on emotion rather than the relevant evidence introduced at trial. *See Erazo*, 144 S.W.3d at 491-92; *Moreno*, 156 S.W.3d at 178-79. This factor also weighs in favor of admissibility.

10

The third factor, the time needed to develop the evidence, also weighs in favor of admissibility. Considering the length of the trial, the State took little time before the jury to lay the foundation for the photographs and introduce them into evidence. *See Horton v. State*, 986 S.W.2d 297, 303 (Tex.App.–Waco 1999, no pet.).

Finally, in analyzing the fourth factor, the State's need for the evidence, we ask, "Does the proponent have other available evidence to establish the fact of consequence the photograph is relevant to show?" *Erazo*, 144 S.W.3d at 495. And, if so, we then ask, "How strong is that other evidence, and is the fact of consequence related to an issue that is in dispute?" *Id.* at 495-96. The strength of the other available evidence to corroborate testimony related to Termain's activities prior to the shooting was not as strong without the photographs. Given that Appellant's primary issue during the punishment hearing was his mitigation defense of "sudden passion," this was a fact of consequence. That said, not all of the photographs related to this issue. However, we find the fourth factor also weighs in favor of admissibility.

In sum, we conclude the photographs are not "so horrifying or appalling that a juror of normal sensitivity would necessarily encounter difficulty rationally deciding the critical issues of this case after viewing them." *Fuller v. State*, 829 S.W.2d 191, 206 (Tex.Crim.App. 1992), *cert. denied*, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993), *overruled on other grounds, Castillo v. State*, 913 S.W.2d 529 (1995); *Contreras v. State*, 73 S.W.3d 314, 321 (Tex.App.–Amarillo 2001, pet. ref'd). The photographs depicted no

11

more than what Appellant caused and what verbal testimony properly described.  *Saldano v. State*, 232 S.W.3d 77, 101-02 (Tex.Crim.App. 2007).  The trial court did not abuse its discretion in admitting the photographs.  *See Allridge v. State,* 850 S.W.2d 471, 494 (Tex.Crim.App. 1991) (en banc)); *Dewberry v. State*, 979 S.W.2d 871, 876 (Tex.App.–Beaumont 1998, pet. ref'd).

### IV.    Harm Analysis

Further, even assuming the trial court erred in the admission of some of the photographs, any alleged error would still be subject to a harmless error analysis.  Tex. R. App. P. 44.2(b).  *Bjorgaard v. State,* 220 S.W.3d 555 (Tex.App.–Amarillo 2007, pet. dism'd).  In a case where an error of nonconstitutional proportions has occurred during the punishment phase of the trial, such error is harmless unless the court can determine that the error affected the substantial rights of the appellant.  A substantial right is affected when the error had a substantial and injurious effect or influence in determining the jury's verdict.  *Russell v. State,* 113 S.W.3d 530, 549 (Tex.App.–Fort Worth 2003, pet. ref'd) (citing *King v. State,* 953 S.W.2d 266, 271 (Tex.Crim.App. 1997)).  Here, the jury's verdict was the rejection of Appellant's sudden passion argument and the ultimate punishment assessed for the crime committed.

A rational jury could have concluded that Appellant's attack on Termain was not conducted under the immediate influence of sudden passion arising from adequate cause. One who provokes or instigates a confrontation cannot claim sudden passion to excuse

12

his actions.  *See Naasz v. State*, 974 S.W.2d 418, 423, 425-26 (Tex.App.–Dallas 1998, pet. ref'd); *Westbrook v. State*, 846 S.W.2d 155, 159 (Tex.App.–Fort Worth 1993, no pet.); *Villegas v. State*, 791 S.W.2d 226, 239 (Tex.App.–Corpus Christi 1990, pet. ref'd). Moreover, the passion cannot solely be the result of former provocation, § 19.02(a)(2), or a culmination of events of which the appellant is generally aware.  *Naasz*, 974 S.W.2d at 425.  Indeed, by proving the absence of contemporaneous provocation, the State negates the foundation upon which sudden passion must stand.  *See Garza v. State*, 878 S.W.2d 213, 217 (Tex.App.–Corpus Christi 1994, pet. ref'd).

The evidence is clear that Appellant provoked the confrontation with Termain—he tracked her down.  When confronted by Appellant, she did nothing to provoke or instigate Appellant's actions—she did not even speak.  Moreover, Appellant testified that it was the prior confrontation at the Wishing Well when he observed Termain kissing Billy Ray that made him "flip," an event from which Appellant had sufficient time to reflect upon and cool down.[7]  There simply was no contemporaneous provocation.  Rather, the instant shooting was the result of a culmination of events that had occurred over time between Appellant and Termain.  When he was asked whether the sight of Termain at the Wishing Well caused him to "flip," he testified, "Oh, I really don't know.  I was just tired . . . [of] being misused and abused.  It just hit me all at once, you know."  Having provoked the incident

---

[7]In instances where the defendant had a cooling off period of fifteen minutes or an hour, courts have not overturned the jury's negative finding on sudden passion.  *See White v. State*, 699 S.W.2d 607, 617 (Tex.App.–Dallas 1985, pet. ref'd) (ten or fifteen minutes); *Gaston v. State*, 930 S.W.2d 222, 226 (Tex.App.–Austin 1996, no pet.) (one hour).

that allegedly inflamed his passions, Appellant cannot claim his conduct arose from adequate cause. *See Naasz*, 974 S.W.2d at 424-25.

Appellant points to trial testimony indicating that Termain was unfaithful. Appellant was confused afterwards and the shooting was out of character for him. Knowing that one's spouse is unfaithful is not adequate cause for murder. *See Bradshaw v. State,* 244 S.W.3d 490, 503 (Tex.App.–Texarkana 2007, pet. stricken); *Naasz*, 974 S.W.2d at 424-425; Garza v. State, 878 S.W.2d at 219. Neither does "sudden passion" include feeling strange, upset, or confused. *Cleveland v. State*, 177 S.W.3d 374, 391 (Tex.App.–Houston [1st Dist.] 2005, pet. ref'd), *cert. denied*, 547 U.S. 1073, 126 S.Ct. 1774, 164 L.Ed.2d 523 (2006); *Gaston v. State*, 930 S.W.2d 222, 226 (Tex.App.–Austin 1996, no pet.). Moreover, that Appellant's actions were out of character with his past behavior provides little, if any, evidence that he acted with "sudden passion" when he shot Termain. Appellant's behavior at the time of the confrontation is not measured against himself. Rather, the issue is whether the cause would have produced that degree of anger, rage, resentment, or terror "*in a person of ordinary temper* so the person is incapable of cool reflection." § 19.02(a)(1) (emphasis added). The test is objective, not subjective.

Even if we were to assume that the trial court erred by admitting photographs that should have been excluded pursuant to Rule 403, considering the fact that the jury reasonably rejected Appellant's claim of sudden passion, and considering the punishment ultimately assessed (thirty-five years confinement) in light of the full range of punishment

14

(5 to 99 years or life), we cannot say that the admission of the photographs in question affected the substantial rights of Appellant. Accordingly, any error in the admission of those photographs would have been harmless. Appellant's single issue is overruled.

## Conclusion

The trial court's judgment is affirmed.

Patrick A. Pirtle
Justice

Do not publish.