NO. 07-08-0132-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL A 

 FEBRUARY 23, 2009

______________________________


LAWYAR T. EWINGS, APPELLANT

V.

THE STATE OF TEXAS, APPELLEE

_________________________________

FROM THE 108TH DISTRICT COURT OF POTTER COUNTY;

NO. 54359-E; HONORABLE ABE LOPEZ, JUDGE

_______________________________

Before CAMPBELL and HANCOCK and PIRTLE, JJ.


MEMORANDUM OPINION


          Appellant, Lawyar T. Ewings, pled guilty to murder.


 During the punishment phase
of trial, he attempted to mitigate his punishment by asserting that he acted under the
influence of sudden passion arising from an adequate cause.


 The jury did not find
Appellant caused the death under the influence of sudden passion and they sentenced 
him to confinement for thirty-five years. In a single issue, Appellant contends the trial court
erred by admitting photographs of the crime scene and the victim’s injuries that were
irrelevant, inflammatory, repetitious, and more prejudicial than probative. We affirm. 
Background
          Appellant and Jessica Termain were involved in an ongoing relationship for a
number of years during which he supplied her with money and/or drugs in return for sex. 
Although Appellant was aware that she also traded sex with other men for money and/or
drugs, he was not bothered so long as she did not show affection toward other men in his
presence. Nevertheless, their relationship was troubled by her addiction and prostitution
which were a constant source of discord between them. 
          On September 15, 2006, Appellant and Felicia Mahone, his cousin, went to the
Wishing Well Bar at approximately 1:00 p.m. At the bar, they met Termain and Appellant
purchased crack cocaine at her request. Before leaving the bar, Appellant and Termain
argued about where she was going to stay. Appellant wanted her to go with him and she
wanted to remain at the bar. Later, at dusk, Termain accompanied Mahone and Appellant
to his apartment where she smoked crack while Appellant and Mahone continued drinking. 
Appellant and Termain also continued to argue about where she would be staying. 
Termain wanted a ride across town. Before departing, Appellant placed his loaded, twelve
gauge shotgun in the backseat of his truck. 
          Later that evening, Appellant and Mahone returned to the Wishing Well. As he
drove up, Appellant observed Termain kissing Billy Ray. He became upset because he
had bought crack for her and she was with another man. When he approached to speak
with her, she told him to get away and leave her alone. Appellant walked away for a time
but returned and said: ”Bitch, you mess with too many men, you’re trying to get somebody
killed.” Appellant and Mahone then left the Wishing Well and drove to another bar where
they continued drinking.
           Early in the morning of September 16, Appellant returned to the Wishing Well
looking for Termain. He pulled his truck into a parking area adjacent to a site where
homeless people camped out across the street from the Wishing Well and observed
Termain sitting on a mattress across from Larry Frazier, a homeless man. He “[didn’t]
know if they were making out,” but “[he] thought they might be making out . . . because of
the way they were laying together . . . [i]t was suspicious to [him].” He also observed
Termain was not wearing the same shirt she was wearing when she left his apartment
earlier that night. 
          Appellant got out of his truck and retrieved the loaded shotgun from the back seat. 
He walked over to where Termain was sitting and made an angry utterance.


 Termain said
nothing. He then leveled the shotgun at her face, leaned in, and pulled the trigger.
           During the punishment phase of trial, Appellant testified as follows:
DEFENSE COUNSEL: Why did you do that [shoot Termain]?
APPELLANT: I don’t know. Man, I just flipped. I don’t know what
happened.
DEFENSE COUNSEL: What made you flip?
APPELLANT: I guess it was Billy Ray. Everybody else, you know what I’m
talking about? This . . . Too much pressure out there.
DEFENSE COUNSEL: If you didn’t go there to kill her, what was it about
seeing her without her shirt on with [Frazier] that changed all that?
APPELLANT: Oh, I really don’t know. I was just tired. You know, being
misused and abused. It just hit me all at once, you know. Any way in the
world that I’d kill that girl.
 
          Appellant placed his shotgun back in the truck and Mahone drove him home. Less
than an hour after the shooting, Appellant called the police from a pay phone. He told the
dispatcher that he thought he had “just killed someone” and that he believed he was
dreaming. Shortly thereafter, he was taken into custody, confessed to shooting Termain,
and signed a written statement. 
          Prior to commencing the punishment phase of trial, the trial court conducted a
hearing to determine whether to exclude certain photographs of the crime scene and
Termain’s injuries that the State intended to present to the jury. Appellant’s counsel
contended that certain photographs were repetitious, inflammatory, and more prejudicial
than probative. The trial court noted that the photographs contained gore and excluded
a number of them. The jury subsequently assessed punishment at confinement for thirty-five years. 
Discussion
          Appellant asserts that the photographs unfairly prejudiced the jury and resulted in
a sentence that fell within the punishment range applicable to a conviction for first degree
felony murder rather than second degree felony murder. In support, he contends the
photographs were irrelevant because, due to his guilty plea, any issues of cause and
manner of death were undisputed and the evidence was cumulative because the State
offered testimonial evidence related to the crime scene and Termain’s injuries. He also
contends the photographs were more prejudicial than probative because of their gruesome
nature and repetitive presentment.
          I.        Standard of Review
          The admissibility of a photograph is within the sound discretion of the trial judge. 
Paredes v. State, 129 S.W.3d 530, 539 (Tex.Crim.App. 2004). We will not disturb a trial
court’s ruling admitting or excluding evidence so long as the trial court’s decision falls within
the “zone of reasonable disagreement.” See Jones v. State, 944 S.W.2d 642, 651
(Tex.Crim.App. 1996). 
          II.       Relevance
          A trial court has wide discretion in deciding the admissibility of evidence presented
at the punishment phase of trial. Henderson v. State, 29 S.W.3d 616, 626
(Tex.App.–Houston [1st Dist.] 2000, pet. ref’d). The Texas Code of Criminal Procedure
provides that, whether punishment is assessed by the trial judge or the jury, the
circumstances of the offense for which the defendant is tried may be considered. Tex.
Code Crim. Proc. Ann. art. 37.07, § 3(a)(1) (Vernon Supp. 2007). Further, the State’s right
to introduce evidence during the punishment phase of trial is not restricted by the entry of
a plea by the defendant or an admission of facts sought to be proved by the State. York
v. State, 566 S.W.2d 936, 938 (Tex.Crim.App. 1978). 
          Here, the photographs of the crime scene and victim were probative of the
circumstances related to the shooting and the nature of the fatal wound Appellant inflicted
on Termain. As such, they were relevant, or helpful, to the jury in tailoring an appropriate
sentence for Appellant. See Williams v. State, 176 S.W.3d 476, 481 (Tex.App.–Houston
[1st Dist.] 2004, no pet.). This is particularly so because Appellant asserted that he caused
Termain’s death under the immediate influence of sudden passion arising from an
adequate cause.


 That the jury also heard testimony regarding the injuries depicted by
the photographs did not necessarily reduce the relevance of the visual depiction. See
Shuffield v. State, 189 S.W.3d 782, 787 (Tex.Crim.App. 2006), cert. denied, 549 U.S.
1056, 127 S.Ct. 664, 166 L.Ed.2d 521 (2007). Accordingly, we find the trial court correctly
determined that the photographs were relevant “to enable the jury to intelligently exercise
their discretion which the law vests in them to assess [Appellant’s] penalty.” York, 566
S.W.2d at 938. We must next determine whether the photographs were more prejudicial
than probative. 
          III.      Unfair Prejudice
          Relevant evidence may be excluded if “its probative value is substantially
outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the
jury, or by considerations of undue delay, or needless presentation of cumulative
evidence.” See Tex. R. Evid. 403. We consider the following four factors when reviewing
a trial court’s evidentiary ruling under Rule 403: (1) the probative value of the evidence; (2)
the potential to impress the jury in some irrational, yet indelible way; (3) the time needed
to develop the evidence; and (4) the proponent’s need for the evidence. Erazo v. State,
144 S.W.3d 487, 489 (Tex.Crim.App. 2004). We also consider the number of
photographs, the size, whether they are in color or black and white, whether they are
gruesome, whether any bodies are clothed or naked, and whether the body has been
altered since the crime in some way that might enhance the gruesomeness of the
photograph to the appellant’s detriment. See Narvaiz v. State, 840 S.W.2d 415, 429
(Tex.Crim.App. 1992). In sum, “[i]f there are elements of a photograph that are genuinely
helpful to the jury in making its decision, the photograph is inadmissible only if the
emotional and prejudicial aspects substantially outweigh the helpful aspects.” Erazo, 144
S.W.3d at 491-92.
          Appellant objects to thirty-four color photographs admitted as State’s Exhibits 43-48,
50, 52-67, 69, 71, 73-74, 78-83, 85 and 87. The photographs were admitted into evidence
in conjunction with the testimony of Jimmy Rifenberg, the Amarillo Police Department crime
scene investigator who documented the crime scene and Termain’s injuries and were
briefly published to the jury by projection onto a screen.


 The photographs provided a
logical progression leading the jury through the crime scene, assisted the jury to visualize
the crime scene, showed the extent of the wounds suffered by Termain, identified the
location of testifying witnesses, and depicted Termain’s activities immediately prior to being
shot by Appellant.


 These and other photographs are unquestionably gruesome. They
depict the location and size of the shotgun wound to Termain’s head, her exposed
cranium, her brain on the pavement, and brain matter, blood, and tissue material scattered
throughout the crime scene. 
          Under the first prong of the Erazo test, we find the photographs had probative value
because they were accurate depictions of both the crime scene and Termain’s body that
would assist a jury to visualize the crime scene as well as the extent of Termain’s injuries
caused by Appellant’s criminal act. Paredes, 129 S.W.3d at 540 (quoting Sonnier v. State,
913 S.W.2d 511, 519 (Tex.Crim.App. 1995)). See also Legate v. State, 52 S.W.3d 797,
807 (Tex.App.–San Antonio 2001, pet. ref’d). The photographs were also probative
because they corroborated the testimony of trial witnesses; see Ledbetter v. State, 208
S.W.3d 723, 734 (Tex.App.–Texarkana 2006, no pet.); Moreno Denoso v. State, 156
S.W.3d 166, 178 (Tex.App.–Corpus Christi 2005, pet. ref’d), and their probative value is
not diminished simply because they corroborate other uncontested testimony. See
Chamberlain v. State, 998 S.W.2d 230, 237 (Tex.Crim.App. 1990) (rejecting the premise
that visual evidence accompanying oral testimony is cumulative of the testimony). 
Although disagreeable to look at, they depict nothing more than the reality of the brutal
crime committed. Sonnier, 913 S.W.2d at 519; Shavers v. State, 881 S.W.2d 67, 77
(Tex.App.–Dallas 1994, no pet.). Accordingly, this first factor weighs in favor of
admissibility. 
          In determining the second factor, we look at the photographs’ potential to impress
the jury in some irrational, yet indelible way. See Erazo, 144 S.W.3d at 491-92. “If a
photograph is competent, material and relevant to the issue on trial, it is not rendered
inadmissible merely because it is gruesome or might tend to arouse the passions of the
jury, unless it is offered solely to inflame the minds of the jury.” Id. (quoting Martin v. State,
475 S.W.2d 265, 267 (Tex.Crim.App. 1972)). Appellant does not claim that the pictures
are inaccurate or improperly enhanced. Having considered the photographs in relation to
the entire record, we cannot conclude the images appealed only to the juror’s emotional
side and that the jury’s decision was based on emotion rather than the relevant evidence
introduced at trial. See Erazo, 144 S.W.3d at 491-92; Moreno, 156 S.W.3d at 178-79. 
This factor also weighs in favor of admissibility.
          The third factor, the time needed to develop the evidence, also weighs in favor of
admissibility. Considering the length of the trial, the State took little time before the jury to
lay the foundation for the photographs and introduce them into evidence. See Horton v.
State, 986 S.W.2d 297, 303 (Tex.App.–Waco 1999, no pet.). 
          Finally, in analyzing the fourth factor, the State’s need for the evidence, we ask,
“Does the proponent have other available evidence to establish the fact of consequence
the photograph is relevant to show?” Erazo, 144 S.W.3d at 495. And, if so, we then ask,
“How strong is that other evidence, and is the fact of consequence related to an issue that
is in dispute?” Id. at 495-96. The strength of the other available evidence to corroborate
testimony related to Termain’s activities prior to the shooting was not as strong without the
photographs. Given that Appellant’s primary issue during the punishment hearing was his
mitigation defense of “sudden passion,” this was a fact of consequence. That said, not all
of the photographs related to this issue. However, we find the fourth factor also weighs in
favor of admissibility.
          In sum, we conclude the photographs are not “so horrifying or appalling that a juror
of normal sensitivity would necessarily encounter difficulty rationally deciding the critical
issues of this case after viewing them.” Fuller v. State, 829 S.W.2d 191, 206
(Tex.Crim.App. 1992), cert. denied, 508 U.S. 941, 113 S.Ct. 2418, 124 L.Ed.2d 640 (1993),
overruled on other grounds, Castillo v. State, 913 S.W.2d 529 (1995); Contreras v. State,
73 S.W.3d 314, 321 (Tex.App.–Amarillo 2001, pet. ref’d). The photographs depicted no
more than what Appellant caused and what verbal testimony properly described. Saldano
v. State, 232 S.W.3d 77, 101-02 (Tex.Crim.App. 2007). The trial court did not abuse its
discretion in admitting the photographs. See Allridge v. State, 850 S.W.2d 471, 494
(Tex.Crim.App. 1991) (en banc)); Dewberry v. State, 979 S.W.2d 871, 876
(Tex.App.–Beaumont 1998, pet. ref’d).
IV.Harm Analysis
          Further, even assuming the trial court erred in the admission of some of the
photographs, any alleged error would still be subject to a harmless error analysis. Tex. R.
App. P. 44.2(b). Bjorgaard v. State, 220 S.W.3d 555 (Tex.App.–Amarillo 2007, pet.
dism’d). In a case where an error of nonconstitutional proportions has occurred during the
punishment phase of the trial, such error is harmless unless the court can determine that
the error affected the substantial rights of the appellant. A substantial right is affected
when the error had a substantial and injurious effect or influence in determining the jury’s
verdict. Russell v. State, 113 S.W.3d 530, 549 (Tex.App.–Fort Worth 2003, pet. ref’d)
(citing King v. State, 953 S.W.2d 266, 271 (Tex.Crim.App. 1997)). Here, the jury’s verdict 
was the rejection of Appellant’s sudden passion argument and the ultimate punishment
assessed for the crime committed.
          A rational jury could have concluded that Appellant’s attack on Termain was not
conducted under the immediate influence of sudden passion arising from adequate cause. 
One who provokes or instigates a confrontation cannot claim sudden passion to excuse
his actions. See Naasz v. State, 974 S.W.2d 418, 423, 425-26 (Tex.App.–Dallas 1998,
pet. ref’d); Westbrook v. State, 846 S.W.2d 155, 159 (Tex.App.–Fort Worth 1993, no pet.);
Villegas v. State, 791 S.W.2d 226, 239 (Tex.App.–Corpus Christi 1990, pet. ref’d). 
Moreover, the passion cannot solely be the result of former provocation, § 19.02(a)(2), or
a culmination of events of which the appellant is generally aware. Naasz, 974 S.W.2d at
425. Indeed, by proving the absence of contemporaneous provocation, the State negates
the foundation upon which sudden passion must stand. See Garza v. State, 878 S.W.2d
213, 217 (Tex.App.–Corpus Christi 1994, pet. ref’d). 
          The evidence is clear that Appellant provoked the confrontation with Termain—he
tracked her down. When confronted by Appellant, she did nothing to provoke or instigate
Appellant’s actions—she did not even speak. Moreover, Appellant testified that it was the
prior confrontation at the Wishing Well when he observed Termain kissing Billy Ray that
made him “flip,” an event from which Appellant had sufficient time to reflect upon and cool
down.


 There simply was no contemporaneous provocation. Rather, the instant shooting
was the result of a culmination of events that had occurred over time between Appellant
and Termain. When he was asked whether the sight of Termain at the Wishing Well
caused him to “flip,” he testified, “Oh, I really don’t know. I was just tired . . . [of] being
misused and abused. It just hit me all at once, you know.” Having provoked the incident
that allegedly inflamed his passions, Appellant cannot claim his conduct arose from
adequate cause. See Naasz, 974 S.W.2d at 424-25. 
          Appellant points to trial testimony indicating that Termain was unfaithful. Appellant
was confused afterwards and the shooting was out of character for him. Knowing that
one’s spouse is unfaithful is not adequate cause for murder. See Bradshaw v. State, 244
S.W.3d 490, 503 (Tex.App.–Texarkana 2007, pet. stricken); Naasz, 974 S.W.2d at 424-425; Garza v. State, 878 S.W.2d at 219. Neither does “sudden passion” include feeling
strange, upset, or confused. Cleveland v. State, 177 S.W.3d 374, 391 (Tex.App.–Houston
[1st Dist.] 2005, pet. ref’d), cert. denied, 547 U.S. 1073, 126 S.Ct. 1774, 164 L.Ed.2d 523
(2006); Gaston v. State, 930 S.W.2d 222, 226 (Tex.App.–Austin 1996, no pet.). Moreover,
that Appellant’s actions were out of character with his past behavior provides little, if any,
evidence that he acted with “sudden passion” when he shot Termain. Appellant’s behavior
at the time of the confrontation is not measured against himself. Rather, the issue is
whether the cause would have produced that degree of anger, rage, resentment, or terror
“in a person of ordinary temper so the person is incapable of cool reflection.” § 19.02(a)(1)
(emphasis added). The test is objective, not subjective. 
          Even if we were to assume that the trial court erred by admitting photographs that
should have been excluded pursuant to Rule 403, considering the fact that the jury
reasonably rejected Appellant’s claim of sudden passion, and considering the punishment
ultimately assessed (thirty-five years confinement) in light of the full range of punishment
(5 to 99 years or life), we cannot say that the admission of the photographs in question
affected the substantial rights of Appellant. Accordingly, any error in the admission of
those photographs would have been harmless. Appellant’s single issue is overruled.
Conclusion
          The trial court’s judgment is affirmed.




                                                                           Patrick A. Pirtle 

                                                                                 Justice 

     

Do not publish.