Don Allen WESTBROOK, Appellant,

v.

The STATE of Texas, State.

Nos. 2–91–350–CR, 2–91–351–CR.

Court of Appeals of Texas,
Fort Worth.

Jan. 27, 1993.

Jerry L. Wood, Fort Worth, for appellant.

Tim Curry, Crim. Dist. Atty., David Curl, Asst. Dist. Atty., Fort Worth, for State.

Before WEAVER, LATTIMORE and HOPKINS,* JJ.

---

* Harry Hopkins, J. (retired), sitting by assignment.

1. Westbrook testified that Autrey was approaching him and Willingham made "sudden moves."

## OPINION

**HARRY HOPKINS, Justice.**

Don Allen Westbrook appeals his convictions of murder and aggravated assault. The jury sentenced him to thirteen years for murder and ten years for aggravated assault. The judge ordered the sentences to run concurrently. We affirm the judgment.

In February of 1989, Michael Willingham borrowed Don Westbrook's car. Four days after he borrowed the car, Westbrook set out to confront Willingham about not returning the car.

On the day of the offense, Willingham was staying at a Fort Worth motel, sharing a room with Kecia Autrey and her young daughter, Ashley. While Willingham was in the bathroom, Autrey heard a banging on the motel room door. Autrey testified that as she reached for the doorknob, the door burst open and Westbrook rushed into the room declaring, "I'll teach you to fuck with me." She further testified that as Willingham stepped out of the bathroom at the rear of the room, Westbrook immediately pointed a gun at Willingham. As Willingham was saying, "hey, hey, what's going on, just wait a minute, calm down," Westbrook shot him in the head and then shot Autrey in the back of the head. Willingham died the next day, and Autrey suffered severe permanent injuries.

Tim Alexander, another State's witness, gave a somewhat different account, testifying he saw Westbrook enter the room and did not hear gunshots until approximately three or four minutes later. Moreover, Westbrook testified he knocked on the door and Autrey let him in. Westbrook further testified he fired his gun when both Willingham and Autrey made a sudden movement toward him, as he was retreating toward the door.[1] Police investigators found no weapons in the room following the shooting, and Autrey testified that nei-

Westbrook later testified that "they was both charging." "They" presumably being Willingham and Autrey.

ther she nor Willingham had any weapons and did not threaten Westbrook.

In his first point of error, Westbrook complains about the wording of the abstract and application paragraphs. In an apparent abundance of precaution, the trial judge charged the jury on the law of self-defense. The evidence in this case, including Westbrook's own testimony,[2] would tend to make the necessity for a charge on self-defense highly suspect. However, considering our disposition of Westbrook's first point of error, wherein he complains of the wording of the instruction and application of the law on self-defense as submitted to the jury, we find that the determination of this issue is not necessary.

█ Westbrook specifically contends the trial court erred by refusing to add the phrase "or was retreating" to the self-defense instruction and the application paragraphs. The abstract paragraph on self-defense tracked the language of the statute. The abstract paragraph given, with Westbrook's requested addition appearing in brackets, follows:

A person is justified in using deadly force against another if he would be justified in using force against the other in the first place, as above set out, and when he reasonably believes that such force is immediately necessary to protect himself against the other person's use or attempted use of unlawful deadly force, and if a reasonable person in defendant's situation would not have retreated [or was retreating].

The application paragraph of the charge, with Westbrook's requested addition appearing in brackets, follows:

Now, if you find ... Don Allen Westbrook, did shoot Michael Willingham ... but you further find from the evidence that, viewed from the standpoint of the defendant at the time, from the words or conduct, or both, of Michael Willingham, it reasonably appeared to the defendant that his life or person was in danger and

there was created in his mind a danger and there was created in his mind a reasonable expectation or fear of death or serious bodily injury from the use of unlawful deadly force at the hands of Michael Willingham, and that acting under such apprehension, he reasonably believed that the use of deadly force on his part was immediately necessary to protect himself against Michael Willingham's use or attempted use of unlawful deadly force, and he shot the said Michael Willingham, and that a reasonable person in defendant's situation at that time would not have retreated [or was retreating], then you should acquit....[3]

Westbrook contends he used deadly force *while* he was retreating, and under the instruction given, the jury could only acquit him on grounds of self-defense if they found he had not been retreating. Thus, he argues the charge was improper, and the error was harmful. We disagree.

We find the requested additions to the instruction and application paragraphs could have resulted in confusing and misleading the jury as to the law of self-defense and the law of retreat. Thus, the requested additions were properly rejected by the trial court.

█ In *Sternlight v. State*, 540 S.W.2d 704 (Tex.Crim.App.1976), the appellant asserted that the charge on self-defense, which was drafted in the language of the statute, was erroneous because it failed to instruct the jury that the statutory duty to retreat was necessary only if she had the ability and opportunity to retreat. *Id.* at 705. The Texas Court of Criminal Appeals held, "We have decided that the instruction on the law of retreat drafted in the language of the statute is sufficient." *Id.* at 706. The court also focused on the word "situation" in the phrase "if a reasonable person in defendant's situation would not have retreated," and stated:

'Situation' means a combination of circumstances *at a given moment.* The instruction given required the jury in de-

---

2. Westbrook testified "I didn't shoot nobody on purpose."

3. The instruction and application paragraphs in the aggravated assault case were similarly worded.

ciding the issue on self-defense to determine whether the appellant had the ability and opportunity to retreat considered as a part of all of the circumstances *of the moment.* [Emphasis added.]

*Id.* In the instant case, the instruction and application given required the jury, in deciding the issue on self-defense, to determine whether the appellant, at the moment, could have avoided the use of deadly force by continuing to retreat from the motel room—if they believed he was in fact retreating, instead of resorting to the use of deadly force.

We find the instruction and application on the law of retreat, drafted in statutory language, are sufficient to properly inform the jury on the law of retreat in situations where the accused may have begun a retreat before using deadly force. *See* Tex.Penal Code Ann. § 9.32 (Vernon Supp. 1993). Point of error number one is overruled.

In his second and third points of error, Westbrook contends the trial judge should have instructed the jury on: (1) voluntary manslaughter as a *lesser included offense* of murder in Willingham's case; and (2) attempted voluntary manslaughter as a *lesser included offense* of aggravated assault in Autrey's case. Westbrook objected to the trial court's failure to submit a charge on the lesser included offenses.

■ In determining whether a charge on a lesser included offense is required, a two-step analysis is required. *Mitchell v. State,* 807 S.W.2d 740, 741 (Tex.Crim.App. 1991); *see* Tex.Code Crim.Proc.Ann. art. 37.09 (Vernon 1981). First, the evidence at trial must show a lesser included offense within the proof necessary to establish the offense charged. *Mitchell,* 807 S.W.2d at 741. Second, there must be some evidence in the record that if the defendant is guilty, he is not guilty of the alleged offense but is guilty only of the lesser included offense. *Id.; see also Havard v. State,* 800 S.W.2d 195, 216 (Tex.Crim.App.1989) (opinion on reh'g).

■ A charge on voluntary manslaughter should only be given when there is evidence that the defendant acted under the immediate influence of sudden passion arising from adequate cause. *Marras v. State,* 741 S.W.2d 395, 405 (Tex.Crim.App. 1987). Adequate cause is cause that would commonly produce a degree of anger, rage, resentment, or terror in a person of ordinary temper, sufficient to render the mind incapable of cool reflection. *Id.* (citing Tex.Penal Code Ann. § 19.04(c) (Vernon 1989)).

■ The sudden passion must be directly caused by and arising out of provocation by the deceased at the time of the offense. *Id.; Marquez v. State,* 725 S.W.2d 217, 224 (Tex.Crim.App.), *cert. denied,* 484 U.S. 872, 108 S.Ct. 201, 98 L.Ed.2d 152 (1987). Passion solely the result of former provocation is insufficient. *Marras,* 741 S.W.2d at 405; *Hobson v. State,* 644 S.W.2d 473, 478 (Tex. Crim.App.1983). Evidence that a defendant was enraged or terrified before acting does not mandate a voluntary manslaughter charge unless evidence shows that the emotions resulted from provocation at the time of the offense. *Marquez,* 725 S.W.2d at 224.

Westbrook argues the following evidence raises the lesser offense of voluntary manslaughter:

(1) Autrey testified that when Westbrook entered the motel room the door flew open and he was alleged to say "I'll teach you to fuck with me";[4]
(2) Westbrook testified that immediately prior to the shooting Westbrook spoke to Willingham about Westbrook's "stolen" car, and about threats Willingham was alleged to have made against Westbrook;
(3) Westbrook claims that the victims were approaching him when he fired.

■ Westbrook was not entitled to a charge on voluntary manslaughter because his "passion" was not sudden. *See Hobson,* 644 S.W.2d at 478 (insufficient evidence of sudden provocation where defendant's passion resulted from earlier

---

**4.** The State points out that at trial, Westbrook denied evidence that he burst into the room

cursing, and now relies upon that evidence to support a jury charge.

events). In the instant case, prior provocation is shown by the fact that he deliberately set out to confront Willingham; Willingham threatened Westbrook days before the offense was committed; Westbrook told the person that drove him to the motel that he was "going to make sure that nobody else takes anybody's car in the future"; and Westbrook forcefully pushed open the motel door and was cursing as he entered.

Moreover, the evidence Westbrook relies on does not indicate that upon arrival at the motel Willingham or Autrey did anything new that would give rise to sudden passion. In fact, when defense counsel asked Westbrook what he and Willingham talked about, he said, "Him threatening me, and my car." "Him threatening me" refers to alleged threats Willingham made over the telephone to Westbrook on a previous day. Thus, the only angry words that were exchanged between the two men were about issues Westbrook was already angry about before he arrived at the motel. Moreover, Westbrook does not allege that Willingham said anything that caused him to act under the immediate influence of sudden passion.

■ Westbrook testified he became fearful when Willingham and Autrey made "sudden moves," and he thought they were "[f]ixing to kill [him]." He further testified, "When they charged, I panicked, and the gun went off." However, when the defendant creates the circumstances which instigate the inflaming of his passion by precipitating a confrontation, a charge on voluntary manslaughter is not required. *See Nance v. State*, 807 S.W.2d 855, 861 (Tex.App.—Corpus Christi 1991, pet. ref'd) (citing *Harris v. State*, 784 S.W.2d 5, 10 (Tex.Crim.App.1989), *cert. denied*, 494 U.S. 1090, 110 S.Ct. 1837, 108 L.Ed.2d 966 (1990)).

In *Nance*, the defendant was angry that a court granted custody of her son to her ex-husband, so she hid on his family farm in an attempt to kidnap her son. *Nance*, 807 S.W.2d at 861. She claimed that when she was discovered outside by her ex-father-in-law, she asked to speak to her ex-husband who was in the house. As they tried to enter the house, she was shot, and eventually, she shot and killed her ex-husband. *Id.* The court found that the defendant was not entitled to a charge on voluntary manslaughter because: (1) the evidence pointed to a long-standing feud rather than to sudden passion; and (2) Nance provoked the confrontation with her ex-husband. *Id.* at 861. The court stated:

[A] defendant creates the circumstances which instigate the inflaming of that defendant's passions, particularly when a defendant is an aggressor, the precipitator of a confrontation, or attempting to commit a crime when allegedly inflamed by another's response.

*Id.*

In the instant case, there was "bad blood" between Westbrook and Willingham at least four days before the shooting. Moreover, the evidence shows that Westbrook set out to find Willingham, and told the man who drove him to the motel he was "going to make sure that nobody else takes anybody's car in the future." Thus, we find there is no evidence of sudden passion, and therefore, the trial court properly refused to charge the jury on the lesser included offense of voluntary manslaughter. Point of error number two is overruled.

In his third point of error, Westbrook contends the trial court erred in refusing to charge on attempted voluntary manslaughter in Autrey's case. In addressing this point, we rely on the discussion in point of error number two.

■ Westbrook argues he has suffered *some* harm because the jury was not charged on attempted voluntary manslaughter. Error in the charge, over timely objection in the trial court, requires reversal if such error is "calculated to injure the rights of the defendant," which means no more than that there must be *some* harm to the accused from the error. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex.Crim.App.1984) (opinion on reh'g); *see also* TEX.CODE CRIM.PROC.ANN. art. 36.19 (Vernon 1981). In other words, a properly preserved error will call for reversal as long as the error is not harmless. *Almanza*, 686 S.W.2d at 171.

Westbrook was convicted of aggravated assault, a third degree felony. *See* TEX.PENAL CODE ANN. § 22.02 (Vernon 1989 & Supp.1993). Attempted voluntary manslaughter is also a third degree felony. *See* TEX.PENAL CODE ANN. § 19.04 (Vernon 1989); *see also* TEX.PENAL CODE ANN. § 15.01 (Vernon Supp.1993). The two offenses have the same range of punishment. *See* TEX.PENAL CODE ANN. § 12.34 (Vernon Supp.1993).[5] Westbrook has not explained how he would have been better off if the jury had had an opportunity to convict him of attempted voluntary manslaughter instead of aggravated assault. Point of error number three is overruled.

■ In his fourth point of error, Westbrook argues that the trial court abused its discretion in failing to grant his challenge for cause regarding venireperson de la Torre, whom he alleges was biased against the minimum range of punishment. Although it is true that a defendant has a right to challenge for cause any juror who could not give the minimum punishment, *Von Byrd v. State*, 569 S.W.2d 883, 891 (Tex.Crim.App.1978), *cert. denied*, 441 U.S. 967, 99 S.Ct. 2418, 60 L.Ed.2d 1073 (1979), this challenge is inapplicable in the instant case because the venireperson was rehabilitated when further questioned by the prosecutor and the trial court judge.

When defense counsel asked de la Torre his ability to consider the minimum punishment in a murder case, the following dialogue occurred:

THE JUROR: On aims of punishment, I would say it's—they are all important, but I guess I would go with deterrent and then punishment. And I really don't have any faith on rehab, but on probation, on a murder case, I would have a problem with that.

[DEFENSE COUNSEL]: Could you fairly consider it if you felt the facts justified it?

THE JUROR: I don't think so.

However, the prosecutor and the judge elicited the following dialogue:

[PROSECUTOR]: And we're not asking you about the specific case, we're asking you with the offense of murder, before you hear any of the facts, if you could keep an open mind to probation until you hear all of the facts in this case. You feel like you could do that?

THE JUROR: Yes, I could do that.

. . . .

THE COURT: Mr. de la Torre, you have changed four times, I'm having trouble making a decision. You keep telling [the defense attorney] that you can't do it and telling [the prosecutor] that you can do it.

THE JUROR: It depends on the circumstances of the case, a certain case.

. . . .

THE COURT: Could you then consider giving probation . . . if you felt like the facts that you had heard at that time justified a probated sentence?

THE JUROR: Depend on facts and circumstances.

. . . .

THE COURT: The issue we are trying to get at . . . would you let the facts make the decision whether you give the maximum punishment or the minimum punishment, which is five years' probation . . . could you do that?

THE JUROR: Yes.

■ A venireperson is not subject to challenge for cause unless he has demonstrated either a bias against the defendant as a person or a bias against some phase of law upon which the defendant is entitled to rely. *Mooney v. State*, 817 S.W.2d 693, 700 (Tex.Crim.App.1991); *see* TEX.CODE CRIM. PROC.ANN. art. 35.16 (Vernon 1989 & Supp. 1993).

■ In reviewing a trial court's ruling on a challenge for cause based on the bias of the venireperson, the decision of the trial

5. The intent to kill is an element of attempted voluntary manslaughter. *See Ex parte Buggs*, 644 S.W.2d 748, 750 (Tex.Crim.App.1983); *Flanagan v. State*, 675 S.W.2d 734, 742 (Tex.Crim. App.1984) (opinion on reh'g). By convicting Westbrook of aggravated assault, the jury found there was no intent to kill Autrey. *See Sanchez v. State*, 745 S.W.2d 353, 356–57 (Tex.Crim.App. 1988).

court will not be disturbed absent an abuse of discretion. *Williams v. State,* 773 S.W.2d 525, 537 (Tex.Crim.App.1988), *cert. denied,* 493 U.S. 900, 110 S.Ct. 257, 107 L.Ed.2d 207 (1989). The trial court's decision is given great deference. *Mooney,* 817 S.W.2d at 701. Additionally, the trial court's ruling on a challenge during voir dire must be considered in light of all the answers given. *Id.*

The State cites us to three cases that address this issue, and we find them controlling. *See Russell v. State,* 727 S.W.2d 92, 93–94 (Tex.App.—Dallas 1987, pet. ref'd) (opinion on reh'g); *Fransaw v. State,* 671 S.W.2d 539 (Tex.App.—Houston [14th Dist.] 1983, pet. ref'd); *Von Byrd,* 569 S.W.2d at 883. Westbrook has not cited any contradictory cases nor has he distinguished his case from the ones cited by the State.

In *Russell,* a venireperson stated he did not think he could consider probation where the defendant was alleged to have been driving while intoxicated. The court of appeals held the State rehabilitated the venireperson by eliciting from him the statement, "In a proper case, under all of the testimony and facts, I guess I probably could." *Russell,* 727 S.W.2d at 93.

In *Fransaw,* a venireperson repeatedly insisted she could not consider a minimum range of punishment "if someone killed someone." *Fransaw,* 671 S.W.2d at 540. Eventually, the trial court rehabilitated her, and she said "she would keep an open mind, and that there could be cases where she might consider the minimum punishment." *Id.* In the instant case, the venireperson did not consistently say he could not consider probation, rather, he gave equivocating answers until he was rehabilitated.

In *Von Byrd,* the venireperson stated he could not consider probation for murder, however, the trial judge and the prosecutor elicited from the venireperson that he could consider probation in a proper case. The court of criminal appeals found no error. *Von Byrd,* 569 S.W.2d at 891.

Thus, the trial court did not err in overruling Westbrook's challenge for cause. Point of error number four is overruled.

The judgment is affirmed.