NO. 07-10-0245-CR

IN THE COURT OF APPEALS

FOR THE SEVENTH DISTRICT OF TEXAS

AT AMARILLO

PANEL E

JULY 18, 2011
_____

TIMOTHY LEE GONZALES,

Appellant

v.

THE STATE OF TEXAS,

Appellee
_____

FROM THE 181ST DISTRICT COURT OF POTTER COUNTY;

NO. 56,439-B; HONORABLE JOHN B. BOARD, PRESIDING
_____

***Memorandum Opinion***
_____

Before QUINN, C.J., CAMPBELL, J., and BOYD, S.J.[1]

Timothy Lee Gonzales was convicted of murder. He seeks to overturn that conviction by contending 1) the evidence is legally insufficient to show that he intentionally or knowingly caused a death, 2) the jury charge caused him egregious harm by failing to limit the culpable mental state to the result of his conduct, and 3) the self-defense jury instruction caused him egregious harm by allowing a finding of self-defense only if a reasonable person would not have retreated. We affirm the judgment.

---

[1]John T. Boyd, Senior Justice, sitting by assignment.

*Background*

On the night of August 28, 2007, appellant went riding in a car with his two friends Juan Granados and Jesus Mascorro. Appellant had recently purchased a gun and the three men discussed shooting it. Finding no place to do so, Granados and appellant eventually fired off some shots in the country. They then returned to town and were traveling on Amarillo Boulevard with Granados driving and appellant in the front passenger seat.

As they drove, the three were passed by a blue pickup truck traveling at a high rate of speed. In response, Granados accelerated, passed the truck, and cut into its lane before stopping at a red light. The truck rapidly approached Granados' vehicle from behind and stopped. Granados then put his car into reverse, moved backwards, and apparently made contact with the truck while the street light remained red.

Granados and the person driving the truck, Cuevas Mata, exited their respective vehicles and began to argue. During that confrontation, appellant rose through the sunroof of the car, pointed his gun at Mata, pulled the trigger of the allegedly unloaded weapon, and told Mata to leave them alone. Mata then lowered himself behind his truck's door. Granados returned to his car, ran the red light, and sped down the street. Mata did the same and sped up to drive alongside the car. When the two vehicles were approximately side-by-side, appellant again appeared in the sunroof, pointed his handgun at the truck (though Granados said he pointed the weapon at Mata) and fired multiple shots. A number of bullets hit the truck and one or more struck Mata. The latter then swerved from his lane, crashed into a motel, exited the vehicle staggering, and died from gunshot wounds.

2

*Legal Sufficiency*

Appellant first argues that the evidence was legally insufficient to show that he "shot to kill." Rather, he allegedly shot simply to defend himself because he was scared of Mata. We review challenges to the sufficiency of the evidence under the standard discussed in *Jackson v. Virginia,* 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). And, since appellant was indicted for murder, the State was required to prove that he intended the death that resulted from his actions. *See Cook v. State,* 884 S.W.2d 485, 490 (Tex. Crim. App. 1994); *see also Chaney v. State,* 314 S.W.3d 561, 563 n.2 (Tex. App.–Amarillo 2010, pet. ref'd) (stating that murder is a "result of conduct" offense which means the culpable mental state focuses on the result of the conduct). Because a culpable mental state may be established through circumstantial evidence, *Dillon v. State,* 574 S.W.2d 92, 94 (Tex. Crim. App. 1978), an intent to kill or cause death can be inferred from the use of a deadly weapon in a deadly manner. *Medina v. State,* 7 S.W.3d 633, 637 (Tex. Crim. App. 1997); *Adanandus v. State,* 866 S.W.2d 210, 215 (Tex. Crim. App. 1993). It may also be inferred from other pertinent acts, words, and conduct of the accused. *Hernandez v. State,* 819 S.W.2d 806, 810 (Tex. Crim. App. 1991).

Here, appellant twice pointed a firearm at Mata. He also pulled its trigger in each instance. Though apparently unloaded when it was first pointed at the victim, the handgun was loaded by appellant before he discharged it at or in the direction of Mata after both cars ran the red traffic light and sped down the road. Furthermore, nothing of record illustrated that Mata was armed, though some evidence suggests that he may have tried to swerve into Granados' car at one point. After firing the weapon, Granados,

appellant, and the other individual drove away. Appellant also threw his gun out the window (though it was later found), and lied to the police about being in a confrontation and shooting a firearm at someone. The foregoing is some evidence upon which a jury could rationally conclude, beyond reasonable doubt, that he intended to cause Mata's death. And, that appellant may have testified that he acted in self-defense because he feared Mata was something a rational jury was free to believe. But, it was equally free to discredit the testimony, which it obviously did. *See Sorto v. State,* 173 S.W.3d 469, 475 (Tex. Crim. App. 2005) (recognizing that the option to believe or disbelieve testimony lies with the jury). By no means was it obligated to believe appellant. So, the verdict is supported by legally sufficient evidence, and we overrule the issue. *See Johnson v. State,* 959 S.W.2d 284, 288 (Tex. App.–Dallas 1997, pet. ref'd) (finding evidence of the intent to kill legally sufficient when the defendant and the driver of a van had exchanged words earlier in the evening, the defendant chased the van and pulled alongside of it, the defendant shot through the passenger side of the van five to seven times, and most of the bullets entered the van aimed at the deceased).

*Jury Charge*

Next, appellant complains of the definitions of "intentionally" and "knowingly" used in the jury charge because they failed to limit the culpable mental state to the result of his conduct. We overrule the issue.

The definitions in question tracked the language specified in the applicable statute. *See* TEX. PENAL CODE ANN. §6.03(a) & (b) (Vernon 2011). That is, neither were modified to fit the nature of the crime at issue, *i.e.* murder. So, the jury was told what "intentionally" and "knowingly" meant with regard to both one's conduct and the result of

4

one's conduct. This is problematic since the *mens rea* applicable to murder focuses not upon the actor's mental state *viz* the acts that culminate in death but rather upon the accused's interest or desire (for lack of better terms) in causing death itself while undertaking the particular acts. Furthermore, a trial court errs when it includes the complete statutory definition of intentionally or knowingly in a murder charge, as the court did here. *Cook v. State,* 884 S.W.2d at 491; *Chaney v. State,* 314 S.W.3d at 567-68. However, appellant did not object to the error; so, any resulting harm must be egregious before we can reverse the judgment. *Almanza v. State,* 686 S.W.2d 157, 172 (Tex. Crim. App. 1984); *Chaney v. State,* 314 S.W.3d at 568. And we find no such harm for several reasons.

First, the application paragraph in the charge corrected the mistake. It instructed the jury that appellant could not be convicted of the crime unless he "intentionally or knowingly cause[d] the death of . . ." Mata. When that happens, *i.e.* when the application paragraph is accurately worded, harm is seldom egregious. *Medina v. State,* 7 S.W.3d at 640.

Furthermore, the quantum of evidence illustrating that appellant intended to cause Mata's death is not meager. He does not deny twice pointing the handgun at Mata, or twice pulling its trigger, or loading the gun after the chase began, or firing multiple rounds, or that he feared Mata and what the latter was going to do, or that simply brandishing the firearm was not enough to deter his victim. Indeed, that he claimed self-defense tends to indicate that he discharged the weapon as an ultimate means of stopping Mata.

5

Third, it may be that the prosecution discussed the intentional nature of appellant's *acts* during its closing. Yet, contrary to appellant's suggestion, that does not mean that the State sought to mislead the jury into convicting simply if appellant intentionally performed the act of shooting the weapon in the direction of Mata. As previously mentioned, the nature of one's conduct and words are important in assessing *mens rea* for murder. Indeed, that often is the only evidence upon the topic since defendants seldom testify or otherwise admit that they wanted to kill the deceased. The manner in which conduct occurs may also be telling. For instance, simply throwing a snowball at someone could be interpreted as the actor having either a malicious or innocent and playful mindset. But, if the actor picked up rocks, added them to the mixture, and then aimed for his target's head, then his purpose or intent could be interpreted quite differently. One could easily say that he was not simply being playful. Indeed, the intentional nature of those additional acts could well be viewed as evidence that the actor expressly desired to injure his target. So, it is not *ipso facto* wrong to ask jurors to look at the intentional nature of conduct to infer whether the actor intended the results of his conduct. And because appellant did not admit to having an intent to kill Mata, the prosecutor was free to focus upon the intentional nature of appellant's conduct in deciding whether he committed murder.

As for appellant's reliance on our opinion in *Chaney v. State*, we find it misplaced. While we reversed the conviction even though the application paragraph was correct, the circumstances in *Chaney* differed greatly from those here. Chaney was not aiming a gun at the victim but rather attempting to retrieve his weapon from someone who had taken it. The firearm discharged during the struggle, not after the

6

accused loaded and aimed it at anyone (as appellant did here).  Moreover, we recognized the rather sparse evidence purportedly illustrating that Chaney sought to kill his acquaintance.  *See Chaney v. State*, 314 S.W.3d at 570-71.  Simply put, these distinctions render *Chaney* of little value to appellant.

In sum, the definitions at issue may have been wrong, but any ensuing harm that may have arisen was not egregious.

*Jury Instruction*

Finally, appellant argues that he was egregiously harmed by the trial court's instruction on self-defense.  Its wording purportedly denied him the defense since it indicated that he could not act in self-defense if he was retreating, as the evidence purportedly showed him to be doing.

Under the statute in effect when this offense occurred, use of deadly force was justified only when retreat was unreasonable.  *Yarborough v. State,* 178 S.W.3d 895, 903 (Tex. App.–Texarkana 2005, pet. ref'd).  Thus, the applicable law required the instruction given by the court.  *See* TEX. PENAL CODE ANN. §9.32(a)(2) (Vernon  2003).[2] Moreover, it has been held that the statutory language is sufficient to instruct the jury even when retreat has begun before the use of deadly force.  *See Westbrook v. State,* 846 S.W.2d 155, 157 (Tex. App.–Fort Worth 1993, no pet.) (holding the same when the defendant sought a modification to the jury charge because he allegedly used deadly force while retreating and contended that the jury could not acquit him on self-defense if

---

[2]This statute was amended effective September 1, 2007, to delete the requirement that a reasonable person in the actor's situation would not have retreated.  TEX. PENAL CODE ANN. §9.32 (Vernon 2011).

they found he was not retreating).  The trial court did not write the statute but simply applied it as written.

Accordingly, the judgment is affirmed.


Brian Quinn
Chief Justice

Do not publish.