# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

## NO. 03-23-00645-CR

---

**Jason Caine Stewart, Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF HAYS COUNTY
### NO. CR-20-2679-B, THE HONORABLE TRACIE WRIGHT-RENEAU, JUDGE PRESIDING

---

## M E M O R A N D U M   O P I N I O N

A jury found Jason Caine Stewart guilty of assault with family violence as a repeat offender. *See* Tex. Penal Code § 22.01(b)(2)(A). The court assessed his sentence at seven years in prison. Appellant contends that he received ineffective assistance of counsel and that the trial court improperly denied his request to strike a potential juror for cause, abused its discretion in admitting unauthenticated photographs of texts and phone calls purportedly from Appellant, and abused its discretion by admitting irrelevant testimony regarding Appellant's behavior after the offense. We will affirm the judgment.

## BACKGROUND

Appellant was charged with assault family violence as a repeat offender.[1] He stipulated that he had a prior conviction for "Assault Bodily Injury-Family Violence" in Travis

---

[1] Appellant was tried for three offenses in the same trial: this assault charge, violation of a protective order two or more times in twelve months, and bail-jumping/failure to appear. The

County court at law cause number C-l-CR-04-684627. He also stipulated that an emergency protective order was issued on June 15, 2020, prohibiting him from communicating directly with Sara,[2] the complainant, in a threatening or harassing manner.

Sara testified that she met Appellant in 2012 and that he became abusive and controlling within three weeks to a month. He brought drugs into her home despite her resistance. During more than one disagreement, he would grab her by the arms, put her in her room, and hold her there or block her exit until she would concede the argument. He is 6′1″ and she is 5′2″. She testified that he would intentionally grab parts of her arms that had been burned when she was a teenager; those areas had scar tissue that was more sensitive and fragile than other skin. She said he controlled or took her money, tracked her through devices on her vehicle, and monitored her through video and audio surveillance at the house. He yelled at her through a Ring monitoring device. Though she sought police intervention for an incident in 2013, she declined to testify against him in 2014 when she was eight months pregnant with his child. (She had another child within a year.) She said that police and courts did not protect her.

Sara testified that, on June 14, 2020, Appellant had been using drugs heavily and was passed out on the bed. She found methadone bottles in his car with other people's names on them. She asked him to leave, cried, then went to take a bath. She said he stood over her and laughed. She said that she was scared because of the previous assaults. He laughed, tried to calm her, got angry, then restrained her. She testified that she got out of the bath and ran down

State dismissed the bail-jumping charge after evidence closed, and the jury found him guilty of the protective-order-violation charge. That conviction is the subject of a separate appeal in this Court, Stewart v. State, No. 03-23-00646-CR.

[2] "Sara" is a pseudonym for the complaining witness.

2

the hall calling 911. She said that he picked her up by her shoulders and told her to hang up. She said that being picked up like that hurt her. Appellant then left the house.

Hays County Deputy Sheriff Adam Halstead was dispatched to Sara's house near dawn. He found her sitting on the front steps of her home. As they talked about the events that led to her calling 911, Appellant started talking over the Ring camera. He was listening in and talking aggressively. Halstead moved the conversation away from the Ring camera. He took photos of bruising and swelling on Sara's arms and wrist.

Sara testified that she obtained an emergency protective order, which empowered law enforcement to arrest Appellant when he returned to the house. He started repeatedly calling her and was angry, which she said aggravated and tormented her. She said she started answering to "gauge [her] level of safety." She also let him talk to their children. Sara testified that he called her "often" between June 15 and June 26. The court admitted photos of her contact history showing a text exchange in which "Jason" pleads with her not to divorce him, and she rejects that request and a list of phone calls that includes several calls from "Jason Stewart" over the course of two days. These photos were taken by law enforcement.

She eventually was granted a lifetime protective order and moved to Corpus Christi to get away from Appellant. But Appellant would not stay away and was arrested for violating the lifetime protective order in 2022. She filed for divorce in 2020, and it was granted in 2022. She testified that she was afraid to come to court.

Appellant testified that he called Sara only to talk to the children. He denied threatening suicide or threatening her. He denied controlling her money, taking her phone, pulling a gun, grabbing her hair, or following her to Corpus Christi. On cross-examination, the following exchange occurred regarding Appellant's interaction with Halstead:

3

A. I asked him what she said, yes.

Q. And he doesn't tell you, right?

A. No, he did not.

Q. But even though he doesn't tell you, you slip and you say, "She's telling you all this stuff like I grabbed her by the arm or something," right?

A. She—when I heard them talking on the porch through the Ring, I heard her say that I had grabbed her by the arm.

Q. We can play that if you want, but that's not on there.

A. Yeah. Well, I had heard him say that when they were on the Ring.

Q. We have a recording of that. It is not on there. Would that surprise you?

A. I guess it wouldn't, no.

There was an emergency protective order in June 2020 and a second protective order signed on August 25, 2021. Appellant did not appear at that hearing and said he learned of that order in December 2021. He said he was never served with a copy of the lifetime protective order and was in denial about the divorce when recorded on phone calls saying, "Fuck that order, I don't give a fuck about that order." He admitted that he called despite knowing an order prohibited him from communicating with her. He pleaded guilty to violating the protective order in Nueces County.

Appellant was convicted of assaulting Sara on or about June 14, 2020, and violating the protective order. The court assessed his sentence at seven years in prison.[3]

---

[3] This sentence runs concurrently with Appellant's seven-year sentence for violation of a protective order two or more times within twelve months, *see* Tex. Penal Code § 25.072(e), that was tried with this offense but appealed separately in *Stewart v. State*, cause number 03-23-00646-CR.

**DISCUSSION**

Appellant contends that the trial court improperly denied his request to strike a juror for cause, that the trial court abused its discretion in admitting unauthenticated photographs of texts and phone calls purportedly from Appellant, and that the trial court abused its discretion by admitting irrelevant testimony regarding Appellant's behavior after the offense. He also contends that he did not receive effective assistance of counsel.

**I.      The trial court did not abuse its discretion during voir dire by denying the motion to strike a panelist for cause.**

Stewart contends that the trial court erred by denying his motion to strike for cause a panelist who responded "yes" to the statement, "I'm just not the right [person] for family violence, violation of a protective order" case. The State contends that he failed to preserve the error for review and that he failed to show error.

To preserve error in the denial of a challenge for cause, the defendant must (1) use a peremptory strike against the prospective juror upon whom the challenge for cause had been made, (2) exhaust his peremptory strikes, and (3) request an additional peremptory strike to use upon a specifically identified objectionable prospective juror, who, because the extra strike was denied, actually sits on the jury. *Nava v. State*, 415 S.W.3d 289, 305 (Tex. Crim. App. 2013). If a trial judge errs in overruling a challenge for cause, then a defendant is harmed if forced to use a peremptory strike to remove the venire member and thereafter suffers a detriment from the loss of the strike. *Davis v. State*, 329 S.W.3d 798, 807 (Tex. Crim. App. 2010).

A trial judge's ruling on a challenge for cause may be reversed only for a clear abuse of discretion. *Id*. When reviewing a trial court's decision to deny a challenge for cause, we look at the entire record to determine if there is sufficient evidence to support the ruling. *Id*.

5

The test is whether a bias or prejudice would substantially impair the venire member's ability to carry out the juror's oath and judicial instructions in accordance with the law. *Id.* The proponent of a challenge for cause has the burden of establishing that the venire member understood the requirements of the law and could not overcome his or her prejudice well enough to follow the law. *Id.* We review a trial court's ruling on a challenge for cause with considerable deference because the trial judge is in the best position to evaluate a venire member's demeanor and responses. *Id.* When a venire member's answers are vacillating, unclear, or contradictory, we accord particular deference to the trial court's decision. *Id.*

Appellant has neither preserved the issue for review nor shown error. The panelist he wanted struck for cause was not empaneled, but the record does not show whether Appellant had to use a peremptory strike against her, nor does it contain any request for an additional peremptory strike that was denied. Further, Appellant has not stated which objectionable juror he was compelled to accept. The error is not preserved. *See Nava*, 415 S.W.3d at 305.

Moreover, the panelist was rehabilitated. Though she originally said she was "just not the right [person]" for a family violence case, when asked, "Do you believe you can render a verdict based only on those facts and law provided to you and set aside what happened in your past to you or anyone else?" she replied, "I think I could, yes, I guess." When pressed for a yes-or-no answer, she replied, "Yes, I could put aside all that. Personally, I don't think I would want somebody like me to do that, but, yes, I think I could." When asked by the court if her issue related to domestic violence was so significant that some of her personal feelings "would bleed into it in a way that would not allow you to give the Defendant a fair shake?" she replied, "No, I don't think so. It happened so long ago." The court denied the request to strike

6

her for cause. Given the panelist's vacillation that landed on the side of fairness toward Appellant, we conclude that the requisite deference to the trial court's decision would require that we find no abuse of discretion shown even if the issue had been preserved. *See Westbrook v. State*, 846 S.W.2d 155, 160-61 (Tex. App.—Fort Worth 1993, no pet.) (holding trial court did not err by denying challenge for cause because prospective juror was rehabilitated upon further questioning by prosecutor and trial court).

## II.     The trial court did not abuse its discretion by admitting evidence of telecommunications and actions after the assault.

Appellant contends that the trial court erred by admitting unauthenticated photographs of texts and phone calls purportedly from Appellant and by admitting irrelevant testimony about his behavior after the assault.

We review a trial court's decision to admit or exclude evidence for an abuse of discretion. *Gonzalez v. State*, 544 S.W.3d 363, 370 (Tex. Crim. App. 2018). An abuse of discretion does not occur unless the trial court acts arbitrarily or unreasonably or without reference to any guiding rules and principles. *State v. Lerma*, 639 S.W.3d 63, 68 (Tex. Crim. App. 2021). We must uphold the trial court's ruling unless the determination "falls outside the zone of reasonable disagreement." *Johnson v. State*, 490 S.W.3d 895, 908 (Tex. Crim. App. 2016). An evidentiary ruling will be upheld if it is correct on any theory of law applicable to the case. *Henley v. State*, 493 S.W.3d 77, 93 (Tex. Crim. App. 2016).

### A. Authentication

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the

proponent claims it is." Tex. R. Evid. 901(a). Electronic evidence may be authenticated in a number of different ways. *Tienda v. State*, 358 S.W.3d 633, 639 (Tex. Crim. App. 2012). The identity of a person who sent a communication from a cell phone can be shown if a witness testifies that a message came from a phone number known to be associated with the purported sender, though there is the possibility that someone other than the phone owner is responsible for any particular message. *Butler v. State*, 459 S.W.3d 595, 600 (Tex. Crim. App. 2015). Printouts of emails, internet chat room dialogues, and cellular phone text messages have all been admitted into evidence when sufficiently linked to the purported author so as to justify submission to the jury for its ultimate determination of authenticity. *Tienda*, 358 S.W.3d at 639. However, that an email on its face purports to come from a certain person's email address, that the respondent in an internet chat room dialogue purports to identify himself, or that a text message emanates from a cell phone number assigned to the purported author is not, without more, sufficient to support a finding of authenticity. *Id*. 642. The trial court's determination of whether the proponent has met this threshold requirement is subject to review for an abuse of discretion and should not be countermanded so long as it is within the zone of reasonable disagreement. *Butler*, 459 S.W.3d at 600. This is a "liberal standard of admissibility." *Id*.

During Sara's testimony, the court admitted photographs of a phone screen showing text messages sent by "Jason"—according to the screen banner—that she identified as being from Appellant. The first message stated, "Please don't divorce me [Sara]. Please, I love you so much and I can't live without you and the kids." In response to a negative reply, the sender said he wanted only to see his kids. The other four exhibits were photos of the phone screen showing a call log with Appellant's name showing up frequently over a short amount of time; some of the calls were outgoing from the children to Appellant. Appellant objected that

8

"we don't know the phone number that those calls are from. You can put anybody's name into a phone and assign it to anything, so there's no proof that those calls were, in fact, from my client." The court overruled the objection, asserting that Appellant could cross-examine the witness on such issues.

Sara then testified that law enforcement took the photos of her phone. She said that the messages were "Jason texting me" from his phone number. She testified that these messages were sent after he got out of jail and the protective order was in place. She also testified that some of the calls were harassing calls from Appellant to her, while others were calls to or from his children. Appellant later cross-examined the witness on when she received the phone and why it was cracked, but did not touch on whether or how she knew the texts and calls came from Appellant. When Appellant testified, he was cross-examined on the communications. He did not deny sending the text messages and commented on the content of one of them. Appellant admitted making numerous phone calls but testified that they were to the children; for example, he said that a FaceTime call was him watching a movie with the children between 2 and 4:30 in the morning.

There was no dispute that the photos were authentic photos of Sara's phone. The objection was to the authenticity of the information contained in the photos regarding whether Appellant was the source of the texts and calls. Any potential error in the admission of the evidence was cured by Sara's testimony that the texts and calls were from Appellant which authenticated those communications sufficiently to justify submission of the evidence to the jury for an ultimate determination of authenticity. *See Tienda*, 358 S.W.3d at 639; *see Romo v. State*, 700 S.W.2d 633, 634 (Tex. App.—Houston [14th Dist.] 1985, no pet.) (holding that error in

9

premature admission of evidence is cured when later testimony established admissibility).  No abuse of discretion is shown in the admission of these exhibits.

### B.  Evidence of acts after the alleged crime

Appellant objected when the State asked why Sara moved to Corpus Christi after obtaining a lifetime protective order and she responded, "I just wanted away from Jason."  After the court overruled the objection on grounds that events after the alleged crime can be introduced to show the nature of the relationship, Appellant obtained a running objection.  The court reminded the jury of an instruction limiting them to considering only extraneous acts they believed beyond a reasonable doubt occurred; they could use such acts for the limited purpose of indicating the nature of the relationship between Appellant and Sara.

Appellant refers to evidence that was "not relevant" and "unsubstantiated allegations sought to be introduced by hearsay."  The evidence concerning the violation of the protective order issued as a consequence of the 2020 assault was relevant to the charged violation of a protective order that was tried at the same time as the assault; the court did not err by admitting that evidence in the joint trial of those offenses.  Evidence relating to the bail-jumping charge that was eventually waived by the State was likewise relevant to that offense and was admissible in the joint trial of all three offenses.  We conclude that Appellant failed to show an abuse of discretion in the admission of the challenged evidence about his actions after the assault.

**III.** **The assistance by Appellant's counsel was not rendered ineffective by the alleged failures to object to evidence of extraneous offenses or to know the range of punishment.**

Appellant contends that he received ineffective assistance of counsel because his attorney failed to object to the admission of a stipulation and confession to a prior extraneous offense of assault with family violence as well as other evidence of Appellant's long-term treatment of Sara. He also asserts that trial counsel was ineffective because he did not understand the full range of punishment.

To prevail on a claim of ineffective assistance of counsel, an appellant must establish that counsel's performance was deficient and that he suffered prejudice because of that deficient performance. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). Counsel's performance is deficient if it falls "below an objective standard of reasonableness." *Id*. at 688. An accused is not entitled to entirely errorless representation, and we look to the totality of the representation in gauging the adequacy of counsel's performance. *Frangias v. State*, 450 S.W.3d 125, 136 (Tex. Crim. App. 2013). A single error can rise to the level of deficient performance "if the error was egregious and had a seriously deleterious impact on the balance of the representation." *Id.* Prejudice exists if an appellant shows "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999). An appellant "bears the burden of proving by a preponderance of the evidence that counsel was ineffective." *Id*. at 813. "Claims of ineffective assistance must be firmly rooted in the record." *Hart v. State*, 667 S.W.3d 774, 782 (Tex. Crim. App. 2023).

On direct appeal, there is a "substantial risk of failure" when raising ineffective assistance of counsel because in most cases, "the record on direct appeal is simply undeveloped

and cannot adequately reflect the failings of trial counsel." *Thompson*, 9 S.W.3d at 813-14. If trial counsel has not had the chance to explain the reasons for his conduct, an appellate court "will not conclude the challenged conduct constituted deficient performance unless the conduct was so outrageous that no competent attorney would have engaged in it." *Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001). There was no new-trial motion or submission of evidence regarding trial counsel's representation.

### A. Failure to object to extraneous offenses

Appellant complains that his attorney was deficient for failing to object to the admission of a stipulation and judicial confession of prior conviction and of testimony concerning Appellant's conduct over the years of his relationship with Sara, including her claims that he had repeatedly physically abused her, restrained her, stolen her money, stalked her using tracking devices, and used illegal drugs.

The absence of objection to the admission of the stipulation to the prior conviction in cause number C-1-CR-04-684627 was not shown to be deficient. The prior conviction was an element of the assault offense charged against a repeat offender. The stipulation is evidence and relevant to the offense charged. *See Hollen v. State*, 117 S.W.3d 798, 802 (Tex. Crim. App. 2003) (finding no error in admission of stipulation to prior convictions). Appellant offers no reason that stipulating to a prior conviction was not sound trial strategy. There is no showing that the stipulation harmed him by conceding an element of the offense that the State could not have proved.

The absence of objection to the evidence of extraneous offenses in Appellant's interactions with Sara is a matter of trial strategy about which we have no information. Evidence

12

of other crimes, wrongs, or other acts is not admissible to prove character and show that Appellant acted in conformity with that character when assaulting Sara. Tex. R. Evid. 404(b)(1). But it is admissible to show motive, opportunity, intent, preparation, knowledge, identity, absence of mistake, or lack of accident. *Id*. R. 404(b)(2). Relevant evidence can be excluded if its probative value is substantially outweighed by the risk of unfair prejudice, confusion of issues, or misleading of the jury. *Id.* R. 403. We do not know how the trial court would have ruled on a Rule 404(b) objection, but its decision to admit such evidence would have been subject to abuse-of-discretion review and treated with deference. *See Montgomery v. State*, 810 S.W.2d 372, 393-94 (Tex. Crim. App. 1990) (finding no abuse of discretion in trial for indecency with child from admission of evidence that defendant quite frequently walked nude with erections around his children). We do not know why Appellant's trial counsel did not object on these bases. Perhaps he did so to avoid alienating the jury or judge with repeated objections to evidence that might be admitted under Rule 404(b)(2) to show intent, absence of mistake, or lack of accident. *See id.* R. 404(b)(2). Because it is unclear why Appellant's trial counsel opted not to object to this evidence, we are not persuaded that Appellant has shown ineffective assistance.

Further, Appellant has not shown a reasonable probability that, but for counsel's alleged unprofessional errors, the result of the proceeding would have been different. *See Thompson*, 9 S.W.3d at 812. The evidence of the assault on June 14, 2020, was compelling without regard to other actions by Appellant. Sara's testimony, the officer's testimony, and the photos of Sara's injuries provided clearly sufficient and not seriously disputed evidence on which the jury could convict Appellant of assault. We are not persuaded that Appellant has shown that the result of the assault trial would have been different had Appellant's counsel

objected to and the trial court excluded all evidence outside of Appellant's actions on June 14-26, 2020, that was directly relevant to that assault and the violation of the protective order.

## B. Knowledge of range of punishment

Appellant contends that his trial counsel was ineffective because he applied for Appellant to be placed on community supervision even though Appellant's prior felony conviction rendered him "ineligible."[4] In closing argument at the punishment phase, Appellant's counsel said, "Judge this man deserves a chance on probation. The one time he had probation he successfully completed it." Trial counsel argued that Appellant was not the "horrible, horrible monster" that the State portrayed him to be.

However, despite the State's insistence in closing that Appellant was not eligible for judge-awarded community supervision, he was. He was sentenced to less than ten years in prison but not for any of the disqualifying offenses. *See* Tex. Code Crim. Proc. arts. 42A.053-.054. Contrary to Appellant's contention, trial counsel correctly stated the range of punishment and his eligibility for community supervision. Trial counsel's argument for an available remedy did not show deficient performance.

We find no evidence in the record that Appellant's trial counsel's application for community supervision rendered his performance deficient.

---

[4] At the punishment phase, Appellant stipulated that he had been convicted of "the State Jail offense of Credit Card Abuse."

### C. Overall representation

We have reviewed the record of trial counsel's overall representation and conclude that Appellant has not shown that his counsel's performance was deficient or that he has suffered prejudice because of any deficient performance. *Strickland*, 466 U.S. at 687.

### CONCLUSION

We affirm the judgment of conviction.

_____

Darlene Byrne, Chief Justice

Before Chief Justice Byrne, Justices Triana and Kelly

Affirmed

Filed:   August 28, 2025

Do Not Publish

15